SPADAFORE, APPELLANT; WEISENSTEIN, APPELLEE, *v.* BLUE SHIELD, OHIO MEDICAL INDEMNITY CORPORATION, APPELLEE.

(No. 84AP-232 — Decided January 15, 1985.)

*Terry D. Van Horn,* for appellant.

*Vorys, Sater, Seymour & Pease* and *Jonathon M. Norman,* for appellee.

VICTOR, J. James Spadafore, plaintiff-appellant, after consultation with his family dentist, Dr. Paul R. Weisenstein, submitted a claim in August 1981 for predetermination of benefits to Ohio Medical Indemnity Mutual Corporation (hereinafter "Blue Shield"). A predetermination was required by the contract because the proposed dental work would exceed $100 and, in fact, would cost $2,400. Dr. Weisenstein prepared the claim form and X-rays and sent these to the insurance company. Blue Shield replied by requesting an additional periodontal evaluation by Dr. Weisenstein and a statement detailing the periodontal treatment to be done on Spadafore. Dr. Weisenstein replied that "no periodontal treatment needed other than scaling, polishing and reconstruction." Blue Shield forwarded the above information to their dental consultant, a Dr. Shape, who had been a student of Dr. Weisenstein. Based on Dr. Shape's decision that Spadafore should be further examined by a specialist in periodontology, Blue Shield requested Spadafore to be examined by a Dr. Murphy. Dr. Murphy concluded that some periodontal therapy was needed. In the meantime, appellant broke a tooth and had it temporarily repaired while awaiting his benefit determination. After some lapse of time, and although the claim had not been approved, Spadafore and Dr. Weisenstein completed the dental work. Subsequently, Dr. Weisenstein was informed that benefits were not forthcoming until "periodontal treatment, preferably osseous surgery," was performed and an eventual treatment plan was formulated which would be considered the "commonly accepted adequate level of care." Appellant received a letter followed by a summary of benefits which showed no payment was made and stated "no benefits allowable." Appellant contacted an attorney who demanded payment of the claim and an apology to Dr. Weisenstein, to which Blue Shield refused. In January 1982, this lawsuit was instituted.

The trial court, upon motion of defendant at the end of plaintiffs' case, sustained a directed verdict on the tort claim for lack of good faith and for any compensatory and punitive damages other than the $1,200 (fifty percent of $2,400) which represented the amount owed under the contract. Thereafter, Blue Shield confessed judgment for $1,200. From this judgment, plaintiff Spadafore appeals, asserting five assignments of error:

"I. The court erred by substituting its judgment for that of the jury by directing a verdict in favor of the defendant on the issue of punitive damages.

"II. The court erred by refusing to admit into evidence both deposition testimony, pursuant to Rule 32(A) of the Ohio Rules of Civil Procedure, and certain business documents relevant to the case.

"III. The court erred by refusing to allow the presentation to the jury of evidence of the breaches of the covenant of good faith and fair dealing by the defendant occurring between the time of filing of the complaint and the date of the trial, where insurance premiums were paid and the group health policy continued in full force and effect through the date of the trial.

"IV. The court erred by failing to allow the jury to consider the issue of

compensatory damages other than the $1,200 contractual obligation confessed to judgment by the defendant.

"V. The court erred by summarily dismissing plaintiff's motion for a new trial before said motion was even filed and by not allowing the plaintiff to present additional evidence of damage after the defendant confessed judgment for its contractual obligation to the plaintiff."

The assignments of error will not be addressed in the order they are raised, but in the logical sequence of whether the evidence was sufficient for a jury determination on the tort of lack of good faith, on the issue of compensatory damages, and finally on the issue of punitive damages.

The third assignment of error presents the threshold question whether the trial court erred in directing a verdict on the breach of duty of good faith and by refusing to admit evidence of such breach. In *Slater* v. *Motorists Mutual Ins. Co.* (1962), 174 Ohio St. 148 [21 O.O.2d 420], the Ohio Supreme Court recognized an action in tort against an insurer for breach of duty of good faith in *settlement* of its claims. Then in *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, the court extended this duty of good faith to the *handling and payment* of its insured's claims and provided that punitive damages could be recovered if proof of actual malice is shown. It is clear then that such a cause of action exists in Ohio. See, also, *Suver* v. *Personal Service Ins. Co.* (1984), 11 Ohio St. 3d 6.

Analyzing the facts of the foregoing cases illustrates that in the case at bar, reasonable minds could conclude that a breach of the duty of good faith was established by the evidence sufficient to submit the issue to the jury. Spadafore had filed his claim on August 6, 1981. Blue Shield then requested an additional periodontal evaluation and more information on the proposed periodontal treatment. These requests were performed and returned by Dr. Weisenstein. Thereafter, Blue Shield again requested another periodontal examination which Spadafore attended even though the additional examination by Dr. Murphy was located out-of-town. Dr. Shape, Blue Shield's consulting dentist, had recommended the additional examination on the basis that Dr. Weisenstein intended to perform no periodontal treatment. Dr. Murphy did only conclude that some periodontal treatment was needed. However, there was expert testimony that the treatment of scaling, polishing and reconstruction proposed by Dr. Weisenstein is considered periodontal treatment and Dr. Shape himself testified that such treatment is a portion of periodontal treatment.

After considerable delay and inconvenience to Spadafore, all dentists proposed some periodontal treatment, even though the opinions on the method or the extent of treatment varied. The expertise of Dr. Weisenstein was known to the consulting dentist, yet Dr. Shape, substituting his judgment for Dr. Weisenstein's, concluded that the proposed treatment did not meet the "commonly accepted adequate level of care" and denied benefits. Since all dentists proposed periodontal treatment, no justification for denial of benefits existed.

Dr. Weisenstein and Spadafore were then notified that benefits were not forthcoming. Spadafore, attempting to have his claim reviewed, demanded payment and an apology to Dr. Weisenstein, all of which Blue Shield refused. Without other recourse available, Spadafore filed this lawsuit in January 1982. Blue Shield adopted the position that it did not owe the claim and maintained this viewpoint until two and one half years later. In January 1984, after three days of trial, Blue Shield confessed

judgment in open court and admitted the claim of $1,200.

This course of conduct which had continued over a two and one-half-year period due solely to Blue Shield's refusal to pay until admitting the claim in court, at the very least, raises an issue for the jury whether the insurer handled this claim in bad faith. In *Roberts* v. *Personal Service Ins. Co.* (1983), 12 Ohio App. 3d 92, the court found that acts evidencing a course of conduct disregarding the insurer's duties to its insured do raise an issue of fact for the jury on lack of good faith.

Furthermore, evidence of the breach of the insurer's duty to exercise good faith occurring after the time of filing suit is relevant so long as the evidence related to the bad faith or handling or refusal to pay the claim. The evidence appellant wanted to have admitted dealt with the results obtained after Dr. Weisenstein completed the dental work. Such evidence is more probative of the possibly errant conclusions of the consulting dentist, and does not directly indicate bad faith of the insurer. To the extent this evidentiary issue is raised by the third assignment of error, it is overruled. The third assignment of error is sustained insofar as it raises the issue of whether the tort claim of bad faith should have been sent to the jury.

Appellant's fourth and fifth assignments of error relating to compensatory damages are well-taken.

The course of conduct sufficiently established the breach of the insurer's duty of good faith so as to submit that issue to the jury. Damages flowing from this conduct and other damages caused by the breach of contract also should have been submitted. Spadafore testified that he lost time at work and had mileage and other travel costs due to the additional examination which was held out of town. There was testimony of some pain and discomfort due to the delay in completing the treatment. An obvious loss to Spadafore was the cost of the lawsuit to enable recovery of his claim. There was evidence of damage, albeit of uncertain amount, to allow the jury to decide the amount to be compensated after Blue Shield admitted its liability on the contract.

Moreover, Spadafore moved for a new trial to present additional evidence of damage after the judgment entry was changed to reflect an emphasis on damages. Such motion was denied.

The fourth and fifth assignments of error are sustained.

The first assignment of error raises the issue of punitive damages. Before punitive damages can be imposed for tortious conduct, there must be further evidence of actual malice. In *Suver, supra,* at 8, the court stated, "[n]or does the fact that a party is entitled to compensatory damages mean that he is entitled to exemplary damages." Actual malice has been explained in many cases. See *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178 [71 O.O.2d 174], and *Charles R. Combs Trucking, Inc.* v. *International Harvester Co.* (1984), 12 Ohio St. 3d 241.

It appears that in some circumstances the conduct which indicates a breach of the duty of good faith of the insurer is also evidence of actual malice while, in others, the same conduct may demonstrate only a lack of good faith and also not suggest actual malice.

In the case at bar, the evidence illustrating the lack of good faith of the insurer does not indicate actual malice in and of itself. However, there was some additional evidence, although not substantial, of possible intentional alteration of documents. Such conduct is the type of intentional and deceptive behavior more indicative of actual malice. If such evidence is believed, the jury could award punitive damages. With the proper caution exercised in instructing the jury as to when punitive damages are proper, the issue of

punitive damages should have been submitted to the jury. The first assignment of error is sustained.

The second assignment of error relates to the deposition testimony and the admissibility of Blue Shield's financial statement. Civ. R. 32, relating to the use of depositions, is fairly broad and seems to authorize the use of Dr. Murphy's deposition in the manner desired by appellant. However, any error has not been shown to be prejudicial inasmuch as appellant was allowed to read a portion of the deposition to the jury to impeach the witness.

Regarding the business documents, the trial court properly refused to admit Blue Shield's financial statement since the court had directed a verdict on punitive damages. Evidence of a defendant's wealth is relevant when considering an award of punitive damages. Since the issue of punitive damages was not submitted to the jury, it was proper that the financial statement of Blue Shield was not also admitted. Of course on remand the statement's limited relevancy will again be at issue for purposes of the punitive damage claim.

The second assignment of error is overruled.

The first, fourth and fifth assignments of error are sustained. The second assignment of error is overruled, and the third assignment of error is partially sustained and partially overruled. The judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WHITESIDE and MOYER, JJ., concur.

VICTOR, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.