WILLIAMS, APPELLANT, *v.*
HEALTHAMERICA ET AL., APPELLEES.

(No. 13088—Decided
October 7, 1987.)

*George Spittal,* for appellant.
*Chris T. Nolan* and *Elizabeth Manning,* for appellee HealthAmerica.
*Mark Frasure,* for appellee Dr. Emmett Monroe.

MAHONEY, P.J. Sharon Williams, plaintiff-appellant, challenges an order granting summary judgment to defendant-appellee HealthAmerica, and an order dismissing without prejudice her claim against defendant-appellee Emmett Monroe, M.D.

### Facts

As an employee of the Western Reserve Psychiatric Habilitation Center, Sharon Williams participated in a group health care plan provided by HealthAmerica. According to the terms of the plan, each participant must select an attending physician from a list of physicians provided by HealthAmerica. Williams chose Monroe as her attending physician and subsequently consulted Monroe regarding any medical problems experienced by her or her son.

The record is rather vague as to the precise chronology of the events giving rise to this action. It appears that in early 1983, Williams consulted Monroe regarding severe cramping, abdominal pain, and rectal pain that she was experiencing at the time. Although Monroe prescribed various medications to treat Williams, her condition persisted. Consequently, Williams requested that Monroe refer her to a gynecologist for a complete pelvic examination. While the precise date of her initial request is unclear, it appears to have occurred several weeks after her first consultation concerning these problems.

Monroe initially refused to refer Williams to a gynecologist and continued to treat her himself. Without Monroe's approval, HealthAmerica would not cover Williams for an examination by a specialist of any sort, including a gynecologist. For approximately one year, according to Williams, Monroe continued to treat her for her condition and, apparently, refused to refer her to a gynecologist.

In early 1984, Williams contacted HealthAmerica by telephone and complained about Monroe's refusals to refer her to a specialist and her contin-

uing physical condition. Williams' deposition testimony indicates that a representative of HealthAmerica stated that the decision of whether to refer Williams to a gynecologist "was strictly up to Dr. Monroe." Williams began experiencing more severe pain and had repeatedly contacted Monroe to see if he would approve a visit by her to the emergency room of a local hospital. Monroe refused to do so and requested that Williams pay a visit to his office.

Williams' deposition testimony indicates that she had completely lost faith in Monroe and decided to go to a hospital emergency room, despite Monroe's denial of her request for approval to do so. A physician at the Akron City Hospital emergency room suggested that Williams see a gynecologist as soon as possible. A few days later, Williams was examined by a gynecologist, Dr. Golshahi, who advised Williams to immediately go into the hospital for a laparoscopic examination. This examination revealed that Williams was suffering from endometriosis.

Williams brought this action in August 1985, naming HealthAmerica and Monroe as defendants. According to the caption of the complaint, Williams sought damages for mental distress and breach of contract against both defendants.

On April 29, 1986, HealthAmerica was granted leave to file a motion for summary judgment. In support of its motion, HealthAmerica filed the deposition of Williams. On May 2, 1986, Monroe filed a motion for the trial court to refer the dispute, as it related to Monroe, to a medical malpractice arbitration panel. Relying upon Williams' deposition testimony, Monroe contended that the claims against him were for medical malpractice rather than breach of contract.

In an entry dated January 20, 1987, the trial court granted Monroe's motion and ordered that the parties name their arbiters within ten days. The trial court also ordered that Williams name her medical expert by February 17, 1987 and that Monroe name his by March 17, 1987.

On January 21, 1987, the trial court granted summary judgment to HealthAmerica. Williams failed to name her arbiter until February 17, the same date on which she named her medical expert. In an entry dated February 26, the trial court, *sua sponte*, dismissed Williams' claim against Monroe "without prejudice for lack of prosecution." This appeal followed.

## Assignment of Error I

"The trial court erred when it decided a contested issue of fact: Whether defendant HealthAmerica violated its agreement with the plaintiff when it repeatedly refused to review their [*sic*] claims examiner's refusal to approve plaintiff's request to have a visit to a specialist and an emergency room visit paid for by HealthAmerica when it was informed by the plaintiff that she disputed the claims examiner's denial of payment."

Williams contends that material questions of fact existed concerning whether HealthAmerica acted in bad faith in handling her claim and, therefore, the trial court improperly granted summary judgment to HealthAmerica. While we do not entirely agree with Williams' reasoning, we do find that the trial court committed reversible error by granting summary judgment to HealthAmerica.

It is axiomatic that in order for a trial court to grant a summary judgment motion, the court must examine the pleadings and other evidentiary materials and conclude that:

"(1) No genuine issue as to any material fact remains to be litigated;

(2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274; *Cunningham* v. *Mottice* (Nov. 5, 1986), Summit App. No. 12593, unreported.

Although Williams' complaint is captioned as an action for mental distress and breach of contract, the allegations contained in Williams' complaint are rather vague concerning what legal theory Williams relied upon as to HealthAmerica. In support of its summary judgment motion, HealthAmerica stated:

"* * * [P]laintiff's pre-trial statement * * * states that her only claim against HealthAmerica is her allegation that it did not act in good faith 'when it failed to inform the plaintiff that she could appeal Dr. Monroe's decision.' The decision spoken of is apparantely [*sic*] Dr. Monroe's alleged denial of the plaintiff's request to be seen by a specialist. * * *"

On appeal, Williams characterizes the issues in dispute as:

"* * * [W]hether HealthAmerica acted in bad faith when it refused to review Monroe's denial of authorising [*sic*] payment for the plaintiff's visit to an emergency room and her visit to a specialist. * * *"

In Ohio, an insured may state a cause of action for an insurer's breach of its duty to handle and pay an insured's claims in good faith. *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, 6 OBR 337, 452 N.E. 2d 1315, paragraph one of the syllabus; *Spadafore* v. *Blue Shield* (1985), 21 Ohio App. 3d 201, 21 OBR 215, 486 N.E. 2d 1201.

Such an action sounds in tort. *Spadafore, supra,* at 203, 21 OBR at 216, 486 N.E. 2d at 1203. Acts which evidence a course of conduct by an insurer of disregarding its duties to an insured are sufficient to raise an issue of fact for a jury as to an insurer's lack of good faith. *Id.* at 204, 21 OBR at 217, 486 N.E. 2d at 1204.

In the case *sub judice,* the propriety of the trial court's granting summary judgment to HealthAmerica turns upon whether there existed any material questions of fact concerning Williams' allegation that HealthAmerica handled her claim in bad faith.

The record clearly indicates that Williams had telephone conversations with several individuals from HealthAmerica concerning her continuing medical condition and Monroe's repeated denials of her requests to consult a specialist. Williams was informed that such a decision was "strictly up to Dr. Monroe." The record is devoid of any indication that HealthAmerica took any further steps to either assist Williams in resolving the controversy or inform Williams of her rights. Although it appears that HealthAmerica did eventually pay for Williams' medical expenses, her initial request for such was denied.

HealthAmerica contends that Williams failed to comply with a contractual grievance procedure, of which she was aware, and that any delays in the handling of her complaint or claims resulted from said failure, rather than bad faith on the part of HealthAmerica. This grievance procedure is contained in the HealthAmerica Group Medical & Hospital Service Agreement ("Service Agreement") and is further discussed in a handbook distributed by HealthAmerica. Although both of these documents were marked as exhibits and referred to during Williams' deposition, this court did not receive a copy of the handbook as part of the of-

ficial record in this matter and received only a portion of the Service Agreement. However, the parties appear to agree upon certain terms contained in the relevant portions of the documents.

The Service Agreement provides in pertinent part:

"11.6 MEMBER GRIEVANCE PROCEDURE. A Member may at any time, process a written complaint with HealthAmerica. If a Member's complaint is not resolved within sixty (60) days by informal action, then he may request a hearing before a committee designated by HealthAmerica."

The relevant portions of HealthAmerica's handbook provide:

"You also have a right to full information on the nature and consequences of any treatments, tests and procedures that may be involved in your health care.

"You have a right to complain if anything in the operation of a Group Health Plan is unsatisfactory to you. For this purpose, GHP has a full-time Membership Advisor, whose role is to receive complaints and suggestions from members and see that action is taken on them.

"If for any reason you still are not satisfied you may state your complaint in writing to Group Health Plan of Northeast Ohio, at the office address on the cover of this booklet.

"If the complaint has not been resolved to your satisfaction within 60 days, you may request a hearing before a committee established for the purpose by the Board of Trustees of GHP. This committee will study your complaint, take action on it, and report in full to you and to the Board of Trustees."

Construing the terms contained in the handbook most favorably to Williams, we find that reasonable minds could conclude that HealthAmerica failed to "see that action" was taken or provide Williams with "full information" as to its grievance "procedure" in response to her initial phone complaints. The handbook does not require that complaints to the membership advisor be in writing. Further, reasonable minds could conclude that HealthAmerica's failure to initially approve payment of Williams' claims evidences a bad faith "course of conduct" on the part of HealthAmerica.

We recognize that tort liability for an insurer's bad faith conduct may not arise "from its mere omission to perform a contract obligation. * * *" *Hoskins* v. *Aetna Life Ins. Co., supra,* at 276, 6 OBR at 341, 452 N.E. 2d at 1320. Rather, a "breach of a positive legal duty imposed by law" is necessary. *Id.* In this regard, we note that R.C. 1742.14 requires that health maintenance organizations "establish and maintain a complaint system" and we find that HealthAmerica must act in good faith in administering the complaint system that it has established.

While we make no disposition regarding the merits of Williams' claim against HealthAmerica, we find that material questions of fact exist as to whether her claim was handled in good faith.

Concerning her claim against Monroe, Williams contends:

### Assignment of Error II

"The trial court erred when it decided that a physician who was the claims examiner for approving paid visits to a specialist and who in that capacity denied a request when a visit was warranted under the circumstances, was engaged in the practice of medicine when he denied the request and therefore the claim against him was one for medical malpractice instead of one for wrongfully denying a valid claim for medical benefits as a claims examiner."

The trial court determined that

Williams was pursuing a medical malpractice claim against Monroe, despite Williams' contention that she had stated a claim for breach of contract. Having made that determination, the trial court ordered that the matter proceed to arbitration and subsequently dismissed Williams' claim without prejudice for failure to prosecute.

On appeal, Williams does not contend that the trial court abused its discretion by dismissing her claim for failure to comply with the arbitration order. Rather, Williams contends that the trial court erred in determining that her claim against Monroe was for medical malpractice and, consequently, should not have ordered that the matter proceed to arbitration. We agree.

In her complaint, Williams alleged that Monroe had denied her the "benefit of her bargain — to be referred to a specialist. * * *" Williams likens her relationship with Monroe to that between an insured and a claims examiner. While we do not find this analogy persuasive, we hold that Williams did state a cause of action for breach of contract against Monroe. During Williams' deposition, the following exchange occurred:

"Q. What is your dispute with Dr. Monroe today if your bills have been paid?

"A. Well, the pain and suffering that I had to go through. I feel that he violated the contract by not giving me the health care benefits that I was promised through the program."

In his motion to refer the matter to arbitration, Monroe relied upon certain other statements made by Williams in her deposition that indicate that Williams felt Monroe committed medical malpractice by failing to refer her to a specialist. While this may be true, these statements do not negate the fact that Williams is pursuing a breach of contract action in the case *sub judice.*

Monroe is a "provider" of health services, as the term is defined in R.C. 1742.01(L). Health maintenance organizations are required to enter into contracts with "providers" pursuant to R.C. 1742.10. All such contracts are subject to approval by the Superintendent of Insurance, who may not approve any such contract which:

"Does not require the contracting health care facility or provider to observe, protect, and promote the rights of enrollees as patients[.]" R.C. 1742.10(B)(3).

We make no disposition concerning what contractual obligations existed between the parties. Williams may or may not be a third-party beneficiary of a contract between HealthAmerica and Monroe. Questions of fact clearly exist in this regard. We merely find that Williams stated a claim for breach of contract and, consequently, the matter should not have been referred to arbitration or dismissed.

## Summary

Williams' assignments of error are sustained. The orders of the trial court are hereby vacated and this matter is remanded for further proceedings which are consistent with this opinion.

*Judgment vacated
and cause remanded.*

GEORGE and CACIOPPO, JJ., concur.