**Motorists Mutual Ins. Co. v. Said**
*[Cite as 7 AOA 295]*

*Case No. 57418*
*Cuyahoga County, (8th)*
*Decided September 20, 1990*

*Thomas E. Dover, Bulkley Bldg., 1501 Euclid Avenue, Cleveland, Ohio 44115, for Plaintiff-Appellee.*

*Robert P. Rutter, Rockefeller Bldg., Suite 700, 614 Superior Avenue, Cleveland, Ohio 44113, for Defendant-Appellant.*

PRYATEL, J.

The defendant insured appeals from a jury trial verdict for the plaintiff insurer on his counterclaim in which he alleged that the

insurer failed to settle his insurance claim in good faith. The insured further appeals from the trial court's granting of the insurer's summary judgment motion on his breach of contract counterclaim. The jury found for the insured on the insurer's claim in which it challenged the amount awarded to the insured by an arbitration panel pursuant to the provisions of its underinsured motorist policy provision.

The insured raises five assignments of error for our review. He asserts that the trial court erred in:

(1) instructing the jury on the issue of bad faith;

(2) excluding evidence of the insurer's settlement appraisals during the bad faith portion of trial;

(3) instructing the jury to disregard litigation expenses as a component of bad faith compensatory damages;

(4) denying his motion for prejudgment interest on his award under the policy; and

(5) granting the insurer's motion for summary judgment on his breach of contract counterclaim.

We find that the trial court erred in its instruction to the jury on the issue of bad faith. Accordingly, we reverse and remand the trial court's judgment with respect to the insured's bad faith claim. We affirm the trial court's judgment in all other respects.

## I.

The insurer issued an automobile policy to the insured with a policy period that extended coverage from January 3, 1982 to July 3, 1982. The policy included a maximum $100,000 coverage for accidents involving uninsured and underinsured motorists. On January 26, 1982, the insured was involved in an automobile accident with an underinsured motorist. The underinsured driver was wholly liable for the collision.

The insured received $25,000 in damages from the underinsured motorist but sought to recover additional amounts under the underinsured motorist provision of his policy with the insurer. The insurer offered an additional $5,000 for his claimed injuries. However, the insured refused to accept that amount in settlement of his claim, asserting that he sustained more extensive injuries than the insurer recognized.

The parties proceeded to arbitration pursuant to the provisions of the policy. The arbitra-

tion panel, unaware of the policy limitation, apparently due to the insured's counsel's failure to provide that information, awarded the insured $118,153. The insurer, on December 5, 1984, thereupon filed this action in the trial court seeking a jury determination of the amount of damages sustained by the insured in the accident.

In his answer, the insured asserted that the insurer did not have the right to appeal the arbitration award pursuant to the arbitration clause of the insurance policy. The insured further asserted a counterclaim alleging that the insurer had failed to exercise good faith in settling his claim.

The trial court dismissed the insurer's claim for want of jurisdiction and confirmed the arbitrators' award. On appeal, this court reversed the trial court's dismissal order and remanded the cause for further proceedings. This court determined that the arbitration clause in the policy was valid and that pursuant to that clause the insurer could seek a jury determination of the amount due the insured under the insurance contract. See *Motorists Mutual Ins. Co. v. Said* (Sept. 3, 1987), Cuyahoga App No. 52700, unreported.

On remand, the insured filed additional counterclaims against the insurer alleging:

(1) breach of contract;

(2) unfair trade practices; and

(3) the intentional infliction of emotional distress. The trial court granted the insurer's motion for summary judgment with respect to each of these additional claims.

The case proceeded to a bifurcated jury trial. On the insurer's damages claim, the jury returned a verdict for the insured in the amount of $480,000. On motion by the insurer, the trial court reduced the award to the policy limit of $100,000. The insurer immediately paid the insured that amount. The jury subsequently rendered a verdict for the insurer on the insured's bad faith counterclaim. The trial court thereafter denied the insured's motion for a new trial on this issue.

## II.

In his first assignment of error the insured argues that the trial court erroneously defined "bad faith" in its instructions to the jury.

In his proposed jury instructions filed with the trial court, the insured requested the following charge on the issue of bad faith:

"An insurance company fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification for such refusal."

The insured in addition requested a further explanatory charge on this issue:

"A mere refusal to pay an insurance claim is not, in itself, conclusive of bad faith. But when an insurance company insists that it was justified in refusing to pay a claim of its insured, such a belief may not be an arbitrary or capricious one. The conduct of the insurer must be based on circumstances that furnish reasonable justification therefore."

Over the insured's objection, the trial court refused to give the former instruction and included a modified version of the latter instruction in its charge to the jury. In defining bad faith, the trial court stated:

"A lack of good faith is the equivalent of bad faith. Bad faith embraces more than bad judgment or negligence. Bad faith imports a dishonest purpose, moral obliquity, conscious wrongdoing or a breach of a known duty through some ulterior motive.

"A mere refusal to pay an insurance claim is not, in itself, conclusive of bad faith, but when an insurance company insists that it was justified in refusing to pay a claim of its insured, such a deed may not be an arbitrary or capricious one. You may take into consideration whether the conduct of the insurer was based on circumstances that furnished reasonable justification, therefore, in determining if [the insurer] acted in good faith."

A trial court shall give only those instructions which constitute a correct statement of the law and which apply to those issues raised by the evidence adduced at trial. *Pallini v. Dankowski* (1969), 17 Ohio St. 2d 51, paragraph two of the syllabus. A reviewing court shall not reverse a trial court's judgment based upon error in some portion of a jury charge where the charge, when viewed in its entirety, clearly and fairly expresses the law. *Yeager v. Riverside Methodist Hosp.* (1985), 24 Ohio App. 3d 54, 55-56. Further, a reviewing court may not reverse a trial court's judgment based upon an erroneous instruction unless the record demonstrates that the complaining party suffered substantial prejudice. *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App. 3d 7, 17.

The Supreme Court of Ohio has long construed wrongful intent as an essential element of bad faith with respect to claims brought by an insured against an insurer. In *Slater v. Motorists Mutual Ins. Co.* (1962), 174 Ohio St. 148, the Supreme Court defined bad faith as paraphrased by the trial court in the first paragraph of its instruction:

"A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Id.*, at paragraph two of the syllabus.

In recognizing a tort cause of action for both compensatory and punitive damages against an insurer for failure to handle or pay a claim in good faith, the Supreme Court in *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, adopted the *Slater* definition of bad faith for such claims. See *Hoskins v. Aetna Life Ins. Co., supra,* at 276. The court further elaborated that an insurer's mere refusal to pay insurance does not establish that the insurer acted in bad faith. However, an insurer's belief that coverage for a claim does not exist may not be arbitrary or capricious. Rather, the insurer's refusal to pay must be based upon circumstances that provide a reasonable justification for the insurer's conduct. *Id.*, at 277, citing *Hart v. Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185. The trial court, in substance, stated this analysis in the second paragraph of its instruction.

The insured argues that the Supreme Court abandoned the "wrongful intent" definition of bad faith as stated in the *Slater* decision in *Staff Builders, Inc. v. Armstrong* (1988), 37 Ohio St. 3d 298.

The court in *Staff Builders* gave the following analysis:

"In *Hart v. Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185, 188, 39 O.O. 465, 466, 87 N.E. 2d 347, 349, this court addressed the potential tort liability of an insurer for refusing to settle a claim against an insured. We observed that such refusal 'may not be arbitrary or capricious ***'. The conduct of the insurer must be based on circumstances that furnish reasonable justification therefor.' In *Hoskins, supra,* this duty of the insurer was extended to the processing of the claims of its insured. *Accordingly, it is our further determination that an insurer fails to exercise good faith in the*

*processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor."* Staff Builders, Inc. v. Armstrong, supra, at 302-303 (emphasis added). While a closer look at *Staff Builders* is essential, it is unnecessary to review that case in its entirety Since we are concerned primarily with the charge to the jury that returned a verdict of $50,000 in compensatory damages for breach of the insurer's duty to act in good faith.[1]

Was the jury finding of bad faith on the part of the insurer (Aetna) sustainable?

As the court held, "An insurer has a duty of good faith in the processing and payment of the claims of the insured. A breach of [that] duty will give rise to a cause of action in tort against the insurer irrespective of any liability arising from breach of contract." *Staff Builders, Inc. v. Armstrong,* supra, at paragraph one of the syllabus.

In reaching that holding, the court noted in its opinion that it had previously held in *Hart v. Republic Mutual Ins. Co.* (1949), 152 Ohio St. 185, that a refusal by an insurer to settle a claim against the insured may not be arbitrary or capricious The court noted further that in *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, the duty of the insurer was enlarged to include the processing of the claims of its insured. The court thereupon concluded that an insurer fails to exercise good faith in handling the claim of its insured upon its refusal to honor the claim upon circumstances that do not furnish reasonable justification. See *Staff Builders, Inc. v. Armstrong, supra,* at 302-303.

In support of the jury finding that Aetna's refusal to honor the claim in *Staff Builders* upon circumstances that did not furnish reasonable justification, the court cited:

"(1) Letters sent to the third party beneficiary appellee (Armstrong) advising that "no action is required of you at this time." These letters were mailed during the period that nursing services were provided.

"(2) Some letters were sent after the claim had been denied. Thus, Aetna permitted and encouraged assumption of obligations by supplier only to deny coverage later on.

"(3) An employee of Aetna, admittedly without medical training, recommended denial of the claim before any review by medical personnel as to justification for expenses incurred.

"(4) Despite the findings by a senior claim examiner in the home office of Aetna that additional medical information was necessary in order to evaluate the recommendation, the medical specialist for Aetna (Charles Scholhamer) admitted that he had not reviewed a letter sent by the attending physician of appellee (Dr. Mark Pearlmutter), notwithstanding that Scholhamer also testified that such information was necessary to evaluate the claim.

"(5) Another medical specialist of Aetna (Dr. Thomas Culley) testified that the claim would have been honored if it had been aware that appellee was unable to administer her own medication. Nevertheless, Dr. Culley admitted that he was aware of the letter from Dr. Pearlmutter which revealed that appellee had sustained intellectual impairment resulting from her stroke." *Staff Builders, Inc. v. Armstrong, supra,* at 303.

Aetna argued that it did not act in bad faith in denying the claim of the appellee because it had no financial incentive to do so since its [administrative] fee was based on claims allowed. However, the court properly pointed out that the number of claims allowed bears on its competitive position vis-a-vis other companies seeking to provide these services

The *Staff Builders* court concluded "that there was ample evidence to sustain the jury finding of bad faith in the processing of the insurance claim of appellee. It is abundantly clear that information relevant to the claim was either reviewed by persons unskilled in its evaluation or disregarded by those who possessed such skills." (Hardly the tests laid down in *Slater, supra.*) *Id.*

In effect, the court found that Aetna acted in bad faith in refusing to honor the claim of its insured upon circumstances that do not furnish reasonable justification even though there was no evidence of "dishonest purpose *** [or] breach of a known duty through some ulterior motive" as the trial court applied the *Slater* charge in explaining the standard of conduct evidencing bad faith. To point up the difference in [compensation] damages between a claim of bad faith and [punitive] damages based on malice, it is necessary to review Aetna's challenge that the jury award of $125,000 in punitive damages was unsupported.

In *Hoskins v. Aetna Life Ins. Co., supra,* it was held:

"Punitive damages may be recovered against an insurer [that] breaches [its] duty of good faith in refusing to pay a claim of its insured upon proof of actual malice, fraud or insult on the part of the insurer." *Id.*, at paragraph two of the syllabus.

"The requisite conduct necessary to support an award of punitive damages is separate and distinct from that sufficient to establish bad faith on the part of the insurer for wrongfully refusing to pay a claim." *Staff Builders, Inc. v. Armstrong, supra,* at 304.

Compensatory damages against an insurer for bad faith are predicated upon refusal to pay its claim where such refusal is not founded upon circumstances that furnish reasonable justification therefor.

In contrast, punitive damages may be recovered against an insurer that breaches the duty of good faith upon proof of actual malice, fraud or insult on the part of the insurer.

In order for the jury to determine whether the bad faith of the insurer was accompanied by malice, the jury must be instructed between the elements necessary to establish bad faith and malice.

In *Staff Builders,* the court concluded that "there was juror confusion regarding the distinct standards applicable to bad faith and malice, respectively." *Staff Builders, Inc. v. Armstrong, supra,* at 305.

In explaining the standard of conduct evidencing bad faith, that trial court in its jury instruction remarked: "[Bad faith] imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive *or ill will partaking of the nature of fraud.* It also embraces the actual intent to mislead or deceive another." *Id.* (Emphasis added.) The Supreme Court observed, "This *standard,* however, is more akin to that necessary to prove malice than bad faith." *Id.* (Emphasis added).

We agree. In the case at bar, in its charge to the jury, the trial court blurred the distinction between an action in bad faith and an action in malice. Nor should an action in bad faith be required to overcome a standard sounding in malice. (That is not to say that the instruction may not be used in defining malice where punitive damages are *also* sought.) See *Helmick v. Republic-Franklin Ins. Co.* (1988), 39 Ohio St. 3d 71, 75 n.1; *Hoskins v. Aetna Life Ins. Co., supra,* at paragraph two of the syllabus.

We conclude that in an action where compensatory damages in bad faith only are sought, it is prejudicial error for the trial court, in charging the jury on the standard of conduct evidencing bad faith, to include language more akin to prove malice than bad faith, to wit: "Bad faith imports a dishonest purpose, moral obliquity, conscious wrongdoing, or a breach of a known duty through some ulterior motive."

Accordingly, we sustain the first assignment of error.[2]

### III.

The insured in his second assignment of error argues that the trial court erred in excluding five documents relating to the insurer's pretrial authorization for and appraisal of the settlement of the insured's claim.

At trial, in order to show that the insurer had acted in bad faith, the insured sought to prove that the insurer's claims officers and attorneys believed that the insured's claim was worth more than the $30,000 that the claims officers stated at trial. The insured sought to introduce:

(1) a letter, dated August 5, 1985, from the insurer's attorney to its claims manager in which the attorney proposed that the two conduct a "realistic evaluation" of a settlement offer;

(2) a letter, dated January 3, 1986, in which the attorney estimated the maximum amount owed to be $75,000;

(3) a "claim evaluation sheet" dated June 23, 1987 in which one of the insurer's claims officers noted that the local office had requested authorization for $75,000 for settlement of the claim;

(4) a form dated July 2, 1987 which indicated that the insurer's main office had authorized the requested amount; and

(5) a memo from the insurer's branch manager dated June 25, 1987 in which the branch manager estimated the maximum liability in the case to be $93,000.

After a voir dire examination of the insurer's claims adjuster supervisor and claims manager, the trial court ruled to exclude the latter three documents. The trial court determined that the settlement appraisals and authorizations included a valuation of the insured's bad faith claim and risk assessment of the outcome of the courts' determination of the validity of the policy's arbitration appeal provi-

sion, in addition to the insured's original claim under the policy. Later, at trial, the trial court ruled to exclude the two letters between the claims manager and the insurer's attorney for the same reason.

A trial court has broad discretion in the admission or exclusion of evidence. *DiPietro v. DiPietro* (1983), 10 Ohio App. 3d 44, 46. Accordingly, a reviewing court shall not reverse a trial court's evidentiary ruling absent a showing that the trial court abused its discretion. *Id.* Thus, this court shall not reverse the trial court's judgment based upon its exclusion of the challenged exhibits absent a showing that the trial court acted unreasonably, unconsciously, or arbitrarily. Cf. *Ruwe v. Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St. 3d 59, 61 ("abuse of discretion" defined).

Generally, evidence of settlement offers are inadmissible to prove liability for a claim. Evid. R. 408. However, evidence of the breach of an insurer's duty to exercise good faith occurring after the commencement of an action is admissible. *Spadafore v. Blue Shield* (1985), 21 Ohio App. 3d 201, 204. More particularly, evidence of settlement offers on an insured's injury claim made following the commencement of litigation in a bad faith action is admissible on the issue of bad faith. Cf. *White v. Western Title Ins. Co.* (1982), 221 Cal. Rptr. 507, 517-519.

In this case, the claims manager's testimony revealed that the settlement estimates and observations contained in the three interoffice memorandums offered as exhibits represented settlement proposals for the insured's entire claim against the insurer, including the bad faith claim. Nothing in the content of these documents suggests otherwise. The contents of the two letters from the insurer's attorney to the claims manager fairly indicates that the eventual outcome of the dispute concerning the validity of the arbitration provision constituted an issue that factored into settlement estimates.

Since the excluded settlement evidence failed to relate solely to the insured's original injury claim, the trial court properly exercised its discretion and excluded the offered documents. The danger of unfair prejudice to the insurer from the introduction of this evidence substantially outweighed its marginal probative value. See Evid. R. 403(A).

We overrule the insured's second assignment of error.

IV.

The insured in his third assignment of error complains that the trial court erred in instructing the jury to disregard litigation expenses as an element of compensatory damages in its bad faith claim.[3] The trial court submitted this instruction after the insured's attorney testified that the insured incurred $6,561 in expenses in litigating his injury claim. These expenses generally consisted of deposition costs and expert witness fees.

"Generally an unsuccessful litigant is not liable for the litigation expenses, including attorney fees, of its adversary in the absence of a statute providing for their allowance."

*Ohio Edison Co. v. Franklin Paper Co.* (1985), 18 Ohio St. 3d 15, 16. In this case, no statute provides for the assessment of litigation expenses. Nor are expenses authorized pursuant to some rule of court or agreement of the parties. See *Jelen v. Price* (1983), 9 Ohio App. 3d 174, 177.

The insured urges this court to create an exception to the general rule and permit the recovery of litigation expenses in those instances where an insurer breaches its duty of settling a claim in good faith. While the insured's claim may have some merit, such changes in the law should be left to the sound discretion of the Ohio General Assembly. See *Ohio Edison Co. v. Franklin Paper Co., supra,* at 18.

The insured claims that the Tenth District Court of Appeals in *Spadafore v. Blue Shield, supra,* recognized an insured's right to recover litigation expenses. However, that court failed to squarely address this issue, merely listing "the cost of the lawsuit" among possible damages by an injured insured by an insurer's failure to act in good faith. See *Id.*, at 204. We decline to recognize that court's observation in passing as constituting precedent for a departure from the well-established general rule.

The insured's third assignment of error lacks merit.

V.

The insured in his fourth assignment of error argues that the trial court erred in denying his motion for prejudgment interest under R.C. 1343.03(A) on his award under his policy with the insurer. In denying the insured's motion, the trial court explained in its judgment entry that the judgment amount was not liquidated or certain until the date of judgment.

Generally, a trial court shall order an award of prejudgment interest pursuant to R.C. 1343.03(A) where the dispute is over liability itself and the amount of liability is not in dispute or readily ascertainable. *Horning-Wright Co. v. Great American Ins. Co.* (1985), 27 Ohio App. 3d 261, 263.

"Where the debt is unascertainable until the presentation of conflicting evidence at trial and entry of judgment, courts should decline to award prejudgment interest." *Sims v. Cleveland Builders Corp.* (Mar. 23, 1989), Cuyahoga App. No. 55153, unreported, slip opinion at 5.

Here, the trial court properly denied the insured's motion since the award was unliquidated and uncertain until judgment. The primary issue during the injury phase of the trial was precisely the amount that the insurer was liable for as opposed to liability itself. Throughout the proceedings below the insurer insisted that its liability for the insured's claim amounted to less than the policy limit. Since this issue was not decided until trial, the trial court properly refused to award prejudgment interest.

We overrule the insured's fourth assignment of error.

## VI.

The insured in his fifth assignment of error argues that the trial court erred in ordering summary judgment on its breach of contract claim. Despite the fact that the jury awarded the insured the maximum amount allowable under the policy, the insured claims that the trial court's ruling prejudiced him since it precluded him from obtaining interest on the award as an element of contract damages.

The insurer argues and the record reflects that the trial court and the respective Parties agreed that the trial court would decide the issue of interest as an element of contract damages upon a finding of bad faith by the jury. We agree with the insurer's claim that the insured waived his right to challenge the summary judgment order by agreeing to this process.

Moreover, the jury failed to find that the insurer acted in bad faith. As the parties recognized, the absence of such finding in substance precluded the award of interest as an element of contract damages.

A motion for summary judgment may only be granted where there exists no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Civ. R. 56(C).

Summary judgment is inappropriate unless it appears from the evidence that reasonable minds could come to but one conclusion and that conclusion is adverse to the non-moving party. *Id.* This court, in reviewing a summary judgment motion, must construe the evidence in a light most favorable to the non-moving party. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St. 3d 45, 47.

In support of its motion, the insurer relied upon this court's prior ruling in this case that under the provisions of the insurance policy the insurer had the right to determine the amount of its liability through a jury trial. See *Motorists Mutual Ins. Co. v. Said* (Sept. 3, 1987), Cuyahoga App. No. 52700, unreported. Since the insurer in refusing to pay the arbitration award and in filing this action appealing that award merely exercised its rights under the insurance policy, no breach has occurred. Accordingly, the trial court properly granted the insurer's motion for summary judgment on the breach of contract claim since no genuine issue of material fact exists and the insurer is entitled to judgment as a matter of law.

We overrule the insured's fifth assignment of error.

Judgment affirmed in part and reversed in part. On the grant of insurer's motion for summary judgment and on the insured's claim of breach of contract, judgment affirmed. On the insured's claim of bad faith, judgment reversed and remanded.

McMANAMON, P.J., and PARRINO, J., concur.

August Pryatel, Retired, Eighth District Court of Appeals and Thomas J. Parrino, Retired, Eighth District Court of Appeals, sitting by Assignment of the Supreme Court of Ohio.

---

[1] A $35,000 verdict was also returned for breach of the insurance contract, as well as $125,000 in punitive damages.

[2] In *Staff Builders*, the award of compensatory damages in bad faith was affirmed since the jury found for the insured (notwithstanding the jury instruction sounding in malice) while the award for punitive damages was vacated for lack of evidence.

[3] The insurer correctly notes that this issue is moot since the jury returned a verdict in its favor on the bad faith claim and this court affirms the trial court's judgment. However, this court must review the merits of all errors assigned and briefed. App. R. 12(A); *Trauth v. Dunbar* (1983), 5 Ohio St. 3d 68, 70.