DIMORA, Appellee,

v.

CLEVELAND CLINIC FOUNDATION, Appellant.

[Cite as *Dimora v. Cleveland Clinic Found.* (1996), 114 Ohio App.3d 711.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 70092, 70516.

Decided Oct. 28, 1996.

*Robert D. Wilson,* for appellee.

*Reminger & Reminger Co., L.P.A., Marc Groedel* and *Thomas R. Wolf,* for appellant.

---

TIMOTHY E. MCMONAGLE, Judge.

Appellant Cleveland Clinic Foundation appeals the decision of the trial court which denied its motions for directed verdicts. For the reasons stated below, we find no error and affirm the judgment of the trial court.

Plaintiff-appellee Gaetana Dimora filed a complaint against defendant-appellant Cleveland Clinic Foundation (the "Clinic") alleging that the Clinic negligently provided medical care and treatment for her during her confinement there. Dimora further claimed punitive damages, alleging that the Clinic and/or its agents and/or employees intentionally falsified her medical records or inaccurately reported her condition to avoid liability for their negligence.

The Clinic filed a counterclaim alleging the failure of the plaintiff to pay an outstanding balance for medical services rendered.

On September 30, 1995, Dimora died from causes unrelated to this matter. Frank Dimora, executor of the estate of Gaetana Dimora, a.k.a. Ann Dimora, was substituted as plaintiff.

The matter went to trial before a visiting judge.

Dimora was admitted on October 18, 1993, as a patient at the Cleveland Clinic in the psychiatric unit for the treatment of depression. Dimora was seventy-nine years old. Sicilian was her first language, and she spoke only limited English. She had difficulty in ambulating and transferring, requiring an attendant while using a walker. Her condition was noted numerous times on her chart. She was evaluated as high risk for falls, and her chart noted she was an MRE (motion-related events) risk. This assessment involved certain criteria and protocol for her care as indicated in her chart. Her chart also noted that she had a falling episode on October 30, 1993, during which the attending nurse lowered her to the floor without injury.

On November 5, 1993, Dimora was preparing to be discharged from the Clinic. After using the toilet with the assistance of a student nurse, she lost her balance and fell backward. The fall caused a severe bruising to her thorax and resulted in the breaking of five or six ribs. The fall was noted both in the nursing notes and the discharge summary by the attending physician, who examined her subsequent to the fall. Upon examination, Dimora was "found to have good strength in all four extremities," was "without pain of movement," and had a five-by-eight-centimeter abrasion on the right posterior thorax. The area was noted to be "non-tender with deep palpitation and there was no evidence of crepitus." Ice and lotion were applied to the abraded area. No X-rays were taken at the Clinic after the fall, and no further treatment was administered by the Clinic. Dimora's broken ribs were not diagnosed until the following day, when X-rays were taken at Marymount Hospital.

At trial, plaintiff presented the expert testimony of Patricia Novak, R.N., who testified as to the standard of care of nurses. Plaintiff presented the testimony of three witnesses, Marie Defabio, Kelly Defabio, and Stacy Lacy, as to the condition of plaintiff Dimora forty-five minutes after her fall while she was still at the Cleveland Clinic.

These witnesses, Dimora's daughter, granddaughter, and caregiver, testified that when they arrived at the hospital to pick up Dimora, she was crying, she was complaining of pain, and her side was all red. Dimora's daughter testified that one of the nurses said that her mother had fallen when she was left alone in the bathroom. The three women each testified that they had difficulty getting Dimora in and out of the car because she was in so much pain. Both movement and breathing caused her pain for a few weeks. Subsequent to this fall, Dimora required much more care, and she was unable to enjoy many of her former activities.

On cross-examination, plaintiff adduced the testimony of the student nurse who was attending to Dimora at the time of the fall. The student nurse gave her description of the events surrounding the incident and the subsequent care of Dimora.

Specifically, the student nurse testified that she was aware of Dimora's high risk for falls and that Dimora was under protocol of MRE and that she had been instructed to assist Dimora at all times. The student nurse testified that when Dimora was finished in the bathroom, she stood Dimora up and settled her in the walker while she checked the door hinge and positioned the wheelchair, which was at the doorway. At that point, she saw Dimora starting to fall backwards. When she attempted to get alongside Dimora to break her fall, they both went down together. After the fall, Dimora had episodes where she was very pleasant

and would smile, but she would cry intermittently. The student nurse stayed with Dimora to comfort her after the fall and applied ice to her side.

Plaintiff also presented the videotape testimony of Edward Rosenthal, M.D., who diagnosed and treated Dimora for her broken ribs subsequent to her discharge from the Clinic.

At the close of the plaintiff's case, the defendant moved for directed verdicts on each of the claims. The basis asserted for the motion for a directed verdict on the medical malpractice/negligence claim was that the expert testimony failed to establish medical malpractice on the part of the Clinic. The Clinic based its motion for a directed verdict on the claim for punitive damage on its assertion that the plaintiff had failed to demonstrate alteration of the record and malice on the part of the Clinic, asserting, therefore, that the claim for punitive damages must fail. The trial court denied each of the motions.

The defense presented its case. The Cleveland Clinic first offered the testimony of the student nurse who was attending Dimora during the incident. She testified that she had been instructed in her training how to deal with patients who need assistance in ambulation and transfer. The defense then presented testimony from its nursing expert, Janice Murphy, R.N., who testified that a student nurse at the fourth level would be qualified to care for a patient such as Dimora and opined that the nursing care rendered at the Cleveland Clinic met the appropriate standard. She testified that a patient can sustain injuries that are not the result of negligence. She further testified that broken ribs would typically be sensitive to deep palpations right after a fracture. The defense then presented Konnie Rogers, R.N., the staff nurse who was the preceptor for the student nurse caring for Dimora at the time of the fall. She testified that she never told anyone that Dimora had been left alone. On cross-examination, she testified that Dimora needed somebody within a safe distance at all times to ambulate and transfer.

At the close of the defendant's case, counsel for defendant reinstated its motions for directed verdict on each claim. The trial court denied both motions.

The jury awarded a verdict in favor of Dimora in the amount of $25,000 for compensatory damages and $25,000 in punitive damages.

Dimora filed post-trial motions on December 7, 1995 for attorney fees, prejudgment interest, reimbursement of costs for video deposition and reimbursement of costs for showing video deposition. On January 16, 1996, the court granted Dimora's motion for reimbursement of the costs of showing the video deposition at trial. The court denied each of the other motions.

Cleveland Clinic filed its notice of appeal on January 10, 1996. This court dismissed the appeal in case No. 70092, citing lack of a final appealable order due

to a failure in the lower court to record the pretrial dismissal of the counterclaim of the Clinic. The Clinic then filed motions to correct the record with both the trial court and the court of appeals. The trial court granted the Clinic's motion to correct the record and journalized an entry dismissing the counterclaim of the Clinic without prejudice. This court denied the motion to correct the record. The Clinic then filed a motion for reconsideration with this court in case No. 70092 on April 3, 1996. On April 15, 1996 the Clinic timely filed a separate notice of appeal in case No. 70516 from the final entry of the lower court journalized on March 15, 1996. On April 30, 1996, this court granted the motion for reconsideration filed by the Clinic and vacated both the dismissal of the appeal and the denial of the motion to correct the record and reinstated the appeal in case No. 70092. On May 13, 1996, this court consolidated the appeals in case numbers 70092 and 70516 for record, briefing, hearing and disposition.

Appellant Cleveland Clinic Foundation presents two assignments of error for our review, based upon the lower court's denial of its motions for directed verdicts in this consolidated appeal. The standard to be used in each assignment of error is the same.

Civ.R. 50(A)(4) governs the standard to be followed for a determination by a trial court of a motion for a directed verdict and states in part:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

■ The court in *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph four of the syllabus, stated:

"It is the duty of a trial court to submit an essential issue to the jury when there *is* sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue, or, conversely, to withhold an essential issue from the jury when there *is not* sufficient evidence relating to that issue to permit reasonable minds to reach different conclusion on that issue." (Emphasis *sic.*)

■ Further, the *O'Day* court stated, "[A] motion for a directed verdict presents not factual issues but a question of law. *Michigan–Ohio–Indiana Coal Assn. v. Nigh* (1936), 131 Ohio St. 405 [6 O.O. 111, 3 N.E.2d 355]." *O'Day,* 29 Ohio St.2d at 219, 58 O.O.2d at 426–427, 280 N.E.2d at 899.

■ In deciding a motion for a directed verdict, it is necessary to review and consider the evidence.

"[I]f all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party. Naturally if the finding on that one issue disposes of the whole case, a duty arises to grant judgment upon the whole case." *Id.* at 220, 58 O.O.2d at 427, 280 N.E.2d at 899–900.

With these standards in mind, we shall address the appellant's assignments of error.

### ASSIGNMENT OF ERROR NO. I

"The trial court erred in denying the appellant's motion for directed verdict on the issue of negligence."

The clinic contends that the trial court erred in failing to grant its motions for a directed verdict on Dimora's negligence and medical malpractice claim. Appellant contends that a claim for ancillary services of a hospital staff member is a claim for medical malpractice pursuant to the decision in *Rome v. Flower Mem. Hosp.* (1994), 70 Ohio St.3d 14, 635 N.E.2d 1239.

Appellant, relying on *Rome* for this proposition, further asserts that medical malpractice must be proven through expert testimony, citing *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673. Appellant contends, then, that the standard of care of a nurse must be established through expert testimony, citing *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 613 N.E.2d 1014.

Appellant relies on *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, for the proposition that, in a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard and the fact that the nurse's negligence, if any, was the proximate cause of the patient's injury.

Appellant's reliance on these propositions of law is misplaced. The sole issue decided by the court in *Rome* was the determination of the time limits within which one must bring suit for negligence occurring during ancillary care arising out of the medical diagnosis, treatment or care of a person. The court in *Rome* determined that such a claim is a medical claim and must be brought within the one-year statute of limitations, R.C. 2305.11(B)(1). The court in *Rome* did not address the standard of proof required to state a claim for medical malpractice or negligence by an employee of a hospital.

■ In an action for medical malpractice or negligence, it is not required that expert testimony be presented in all circumstances. The court in *Bruni, supra,* after noting that the required standard of care and skill of a physician must ordinarily be determined from the testimony of medical experts, went on to say that "[i]t should be noted that there is an exception to that rule in cases where the nature of the case is such that the lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it, and in such case expert testimony is not necessary." *Id.,* 46 Ohio St.2d at 130, 75 O.O.2d at 186, 346 N.E.2d at 677.

■ As the court determined in *Berdyck, supra:*

"Whether a nurse has satisfied or breached the duties of care owed to the patient is determined by the applicable standard of conduct.

"The standard of conduct applicable to this issue is proved by expert testimony. 'In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and, that the nurse's negligence, if any, was the proximate cause of the patients injury.' *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, paragraph one of the syllabus. In a negligence action involving conduct within the common knowledge and experience of jurors, expert testimony is not required. *Id.* at 103, 592 N.E.2d at 833." *Berdyck,* 66 Ohio St.3d at 580–581, 613 N.E.2d at 1022.

■ The claims in the matter *sub judice,* unlike the claims in *Ramage,* are allegations of negligence where expert opinion testimony is unnecessary to establish the standard of care and the breach thereof. This case falls within the common-knowledge exception. "Under this exception, matters of common knowledge and experience, subjects which are within the ordinary, common and general knowledge and experience of mankind, need not be established by expert testimony. *Johnson v. Grant Hosp.* [ (1972), 31 Ohio App.2d 118, 124–125, 60 O.O.2d 202, 205–206, 286 N.E.2d 308, 312–313]." *Ramage, supra,* 64 Ohio St.3d at 103, 592 N.E.2d at 833.

While in the care of a student nurse, Dimora, who had a documented history of balance difficulties and who needed assistance with the use of a walker, was unattended at her walker while the student nurse opened the bathroom door. Dimora fell backward and was injured. The question presented was whether the conduct of the student nurse was reasonable in this circumstance. The conduct complained of here is clearly within the common knowledge and experience of jurors, not requiring knowledge beyond the ken of the layperson, and, therefore, expert testimony is not required. See *Jones v. Hawkes Hosp. of Mt. Carmel*

(1964), 175 Ohio St. 503, 26 O.O.2d 170, 196 N.E.2d 592, and *Burks v. Christ Hosp.* (1969), 19 Ohio St.2d 128, 48 O.O.2d 117, 249 N.E.2d 829.

From the record before us, we find that the following was established. Dimora's patient record indicated that she had a serious balance difficulty and that she needed assistance in walking with the walker and in transferring. The record indicated that she had fallen backward on October 30, 1993 and was lowered to the floor without injury. Dimora was afraid of falling and needed encouragement and physical assistance with her walker. The student nurse was aware that Dimora needed assistance for her unsteady gait and weakness. Nonetheless, the student nurse moved away from Dimora while she was standing with her walker in order to secure the bathroom door hinge and adjust the wheelchair. While the student nurse was away from Dimora, Dimora fell. As a result of the fall, she suffered bruising and five or six broken ribs.

Reviewing the evidence most favorably to the appellee in this case as we are required to do, we find that enough evidence existed on the issue of negligence that reasonable minds could differ, and, therefore, a directed verdict would not be proper.

The trial court properly denied the appellant's motions for a directed verdict on the issue of medical malpractice and negligence and submitted the issue to the jury. Accordingly, appellant's first assignment of error is not well taken.

## ASSIGNMENT OF ERROR NO. II

"The trial court erred in denying appellant's motion for directed verdict on the issue of punitive damages."

Appellant contends that the trial court erred in denying its motion for a directed verdict on the appellee's claim for punitive damages, alleging that the appellee failed to present evidence of alteration of the record or, further, failed to demonstrate fraud and actual malice. We do not agree.

The claim of the appellee for punitive damages alleges that the hospital, through its agents and/or employees, intentionally falsified her medical records or inaccurately and improperly reported the fall incident which occurred on November 5, 1993 to avoid liability for its medical malpractice or negligence. Appellee, in her claim for punitive damages, relied on the holding in *Moskovitz v. Mt. Sinai* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331. The Supreme Court in *Moskovitz* stated at paragraph one of the syllabus:

"In a case involving medical malpractice where liability is determined and compensatory damages are awarded, punitive damages pled in connection with the claim for malpractice may be awarded upon a showing of actual malice as that term is defined in the syllabus of *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512

N.E.2d 1174. An intentional alteration, falsification or destruction of medical records by a doctor, to avoid liability for his or her medical negligence, is sufficient to show actual malice, and punitive damages may be awarded whether or not the act of altering, falsifying or destroying records directly causes compensable harm."

■ Thus, pursuant to *Moskovitz*, actual malice may be shown where there is falsification by a doctor to avoid liability for medical negligence.

We have reviewed the record before us to determine whether the evidence presented is sufficient to support each of these elements to permit reasonable minds to reach different conclusions where the evidence is construed most strongly in favor of the party against whom the motion was made. Civ.R. 50(A)(4).

■ At trial, the testimony presented by witnesses for the appellee indicated that the right side of Dimora's body was red, bruised and painful after the fall. Three witnesses testified that Dimora was crying and in pain approximately forty-five minutes after the incident while she was still in the hospital. Testimony was offered that broken ribs would be painful upon deep palpitation. Pictures were offered into evidence indicating large areas of bruising on Dimora's body on the day after the event.

In contrast to the evidence presented by the appellee, the progress note of the examining physician at issue here states in part:

"Pt was in transport between walker and toilet seat according to student nurse. Pt was @ walker and lost balance backward. The SN acted by holding the pt from the L side and gradually lowering her to the floor, and called for help. Pt was lifted back into wheelchair. On exam, pt has full use of all 4 extremities c̄ good strength and no pain c̄ movement. A small 5 × 8 cm area on the pts r posterior thorax was slightly scraped. It was not tender to deep palpations and no crepitus was noted. There were no other lacerations bumps or abrasions noted. Head was atraumatic. The abrasion on the thorax was treated c̄ lotion and ice. The pt was smiling and laughing pleasantly during the exam."

Appellant contends that this record accurately reflects the incident on November 5, 1993. However, the testimony presented by the appellee is in apparent conflict with the description of the incident, the injury and Dimora's demeanor. The evidence has shown that Dimora had fallen and broken five or six ribs; yet, upon examination, the doctor noted that she was smiling and laughing pleasantly with no pain upon deep palpation of the area. Other testimony indicated that she was in pain and crying. This discrepancy between the written progress notes and the testimony of the witnesses who observed Dimora is sufficient to raise a question of fact as to the possible falsification of documents by the physician to

minimize the nature of the incident and the injury of the patient due to the possible negligence of the hospital personnel. The testimony of the witnesses, if believed, would be sufficient to show that the physician falsified the record or intentionally reported the incident inaccurately in order to avoid liability for the negligent care of Dimora. In *Spadafore v. Blue Shield* (1985), 21 Ohio App.3d 201, 21 OBR 215, 486 N.E.2d 1201, the court found that where there was some additional evidence of possible intentional alteration of documents, it was error on the part of the trial court to substitute its judgment for that of the jury by directing a verdict in favor of the defendant on the issue of punitive damages. The *Spadafore* court stated, *id.* at 204–205, 21 OBR at 217–218, 486 N.E.2d at 1204–1205:

"Such conduct is the type of intentional and deceptive behavior more indicative of actual malice. If such evidence is believed, the jury could award punitive damages. With the proper caution exercised in instructing the jury as to when punitive damages are proper, the issue of punitive damages should have been submitted to the jury."

Accordingly, after construing the evidence most strongly in favor of appellee Dimora, the trial court properly determined that reasonable minds could differ on the issue of whether the progress notes and the discharge notes were falsified or inaccurately reported to avoid liability for the medical malpractice or negligence of hospital personnel. The evidence submitted was sufficient to raise a factual question requiring determination by a jury. The issue of punitive damages here was, therefore, properly submitted to the jury.

Therefore, the trial court did not err when it denied the appellant's motions for directed verdicts on the appellee's claims for negligence and for punitive damages. The judgment of the trial court is affirmed.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., and HARPER, J., concur.