JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Daniel O. Corrigan granting a directed verdict in favor of appellee Elizabeth Amerson and against appellants Kashiff Moore, a minor, and his custodial grandparents, on the child's claims for personal injury arising out of an automobile collision. The Moores claim it was error to invade the province of the jury by making credibility determinations and weighing the evidence at the close of their case. Amerson maintains that the directed verdict was proper because the Moores failed to introduce any evidence that she should have seen the child dart into the street and also failed to introduce evidence that she should have been able to stop in time to avoid the accident. We affirm.
From the record we glean the following: At about 7:25 p.m. on August 1, 1996, Kashiff Moore, then one week past his sixth birthday, was walking southbound on the east sidewalk of Green Road in Warrensville Heights with two or three girls ranging in age from nine to twelve years. The children had been to a candy store and were returning to one of the girls' home. The group stopped between Gary Street and Vera Street and stood on the tree lawn preparing to cross Green Road. At the same time Amerson, in the company of several passengers, was driving her car southbound on Green Road toward its intersection with Miles Avenue. Moore, who had been holding one of the older girls' hands, let go and began to run across the street. He crossed the northbound lane, but was struck by Amerson's car and sustained, among other injuries, a fractured femur.
The Moores filed suit on December 20, 1996, alleging negligence and Amerson's answer contained a general denial as well as the affirmative defenses of sudden emergency and the negligent supervision of the grandparents. The case proceeded to trial on July 20, 1999.
The Moores presented three witnesses relevant to proving Amerson's liability; fourteen year-old DeShanda Christmas, twelve year-old Sharice Harris, and the defendant, Elizabeth Amerson, testifying as if on cross-examination. Christmas testified that she, Moore, Harris, and a third girl, Brooke, were together on August 1, 1996, and that Brooke was holding Kashiff's hand before he crossed the street. She said that Harris ran across the street first, and that Brooke then let go of Moore's hand and told him to run across the street after Harris. Although Christmas testified that she did not think it was wise for Brooke to let go of Moore's hand and send him across the street, she did not see any northbound cars pass before Moore left the curb and claimed she did not see Amerson's car approaching until it hit Moore. She believed, although she did not estimate its speed, that the car was going too fast under the circumstances.
When, during cross-examination, Christmas was asked about an earlier statement made to an insurance investigator in which she failed to mention Harris's presence, she explained that Harris left the scene immediately after the accident and she probably forgot about Harris's presence when questioned later. Harris testified only that she crossed the street before Moore, and did not look back until hearing the collision, at which point she saw that Moore had been struck by a car. She testified that she ran home because she felt responsible for Moore's attempt to cross the street, and wished to avoid punishment. She did not see the collision and also did not see Amerson's car approaching.
Amerson testified that she turned southbound onto Green Road from McCann Street, three blocks north of Vera Street. She saw the children walking and, as she approached, saw that they were preparing to cross the road. She said she saw Moore attempt to cross alone but one of the girls held him back and, because she assumed the older girl had the boy under control, she did not slow her car. When Amerson turned her attention to oncoming traffic in the northbound lane of Green Road she saw Moore dart into her lane from behind a northbound car that had obstructed her view. She stated that just before impact, a passenger in her car yelled a warning, and she veered to the right in an attempt to avoid hitting Moore but struck him with the driver's side of her car, and that he must have been thrown forward into the southbound lane because of the angle of her car as she veered right. Amerson was never asked whether she saw Harris or anyone else cross the street before she struck the boy, nor was she asked about the speed of her car at any time prior to or after impact.
In addition to these three witnesses, Moore introduced photographs of the accident scene which showed the position of his body relative to Amerson's car. The photographs were intended to show that Amerson struck Moore with the front of her car rather than on the driver's side, leading to the inference that Moore would have been visible and avoidable for a longer period of time before the collision.
After the Moores rested their case, Amerson moved for a directed verdict, arguing that they had introduced no evidence that she owed Moore a duty or had breached it, that she failed to keep a lookout, was speeding or traveling at a speed that prevented her from bringing her car to a stop within the assured clear distance ahead. Amerson, argued, in the alternative, that even if the Moores had shown she breached some duty, they had not shown proximate cause — that Amerson could have avoided hitting the boy if she had not committed the breach of duty. The Moores countered that Amerson, in the exercise of ordinary care, should have anticipated that a child would dart out, and her failure to slow down was evidence of negligence.
The judge determined that the Moores had failed to meet their burden of proof because there was no evidence that Amerson was operating her car negligently, and granted the directed verdict.
The Moores assert a single assignment of error:
 THE TRIAL COURT ERRED IN DRAWING ALL INFERENCES IN FAVOR OF THE DEFENDANT AND AGAINST THE PLAINTIFFS IN DECIDING THE MOTION FOR A DIRECTED VERDICT IN THE DEFENDANT'S FAVOR.
When a party has made a motion for directed verdict pursuant to Civ.R. 50(A), a judge must construe the evidence most strongly in favor of the party against whom the motion is directed. Civ.R. 50(A)(4). A motion for a directed verdict tests the legal sufficiency of the evidence to support a prima facie claim, and therefore presents a question of law. Grau v. Kleinschmidt (1987), 31 Ohio St.3d 84, 90, 509 N.E.2d 399; see, also, Dimora v. Cleveland Clinic Found. (1996), 114 Ohio App.3d 711, 716,683 N.E.2d 1175. A judge may not weigh the evidence nor test the credibility of the witnesses but must give to the party opposing the motion the benefit of all reasonable inferences from the evidence. Zavasnik v. Lyons Transp. Lines, Inc. (1996), 115 Ohio App.3d 374, 378,685 N.E.2d 567; see, also, Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284, 423 N.E.2d 467. He shall direct a verdict in favor of the moving party only after it has found that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted [by the nonmoving party] and that conclusion is adverse to the [nonmoving party.] Civ.R. 50(A)(4). Where there is substantial competent evidence favoring the nonmoving party so that reasonable minds might reach different conclusions, the motion must be denied. Ramage v. Cent. Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97, 109, 592 N.E.2d 828.
The Moores complain that the judge impermissibly weighed evidence, decided inferences in Amerson's favor, and adopted an incorrect standard of care in granting the directed verdict. The judge did comment that the evidence showed competing inferences, and that one could infer Amerson's view of the children was obstructed by northbound traffic despite testimony there were no cars in the northbound lane. He also commented that one could infer that the child ran into the side of Amerson's driver's side fender despite inferences from photographs that he was struck by the car's front end. Based upon those comments that more than one inference could be drawn from the evidence presented, the Moores conclude that the judge decided to accept some evidence as true and construe inferences in favor of Amerson in order to support his finding that they had failed to prove Amerson's negligence by a preponderence of the evidence.
Amerson counters that she owed no duty to Moore, she was lawfully driving on Green Road, was justified in believing that Moore's companions would ensure his safety, and there was no evidence that she breached any standard of care.
Amerson testified that she saw the children and even recognized their relative ages. A driver in Amerson's position owes a higher duty of care to children than she would owe to adults under the same circumstances. Sargent v. United Transp. Co. (1978), 56 Ohio App.2d 159, 162,381 N.E.2d 1331, 1334; Williams v. Putnam Transfer Storage Co. (Feb. 3, 1994), Cuyahoga App. No. 64659, unreported. Amerson knew the children were poised to cross the street, and had even seen Moore start to enter the street only to be held back by one of the other children. The question, therefore, is whether Amerson breached that duty of higher care.
In Sargent, supra, a bench trial on liability only, the cab driver noted a four-year-old on a bicycle with training wheels, coming into the street and into his path just before impact. It appears the child wore bright clothing and would have been in plain view 100 to 150 feet before impact and, although the driver did not recall seeing any children in the area until he saw the child on the bicycle, he drove on that street twice a day for five months and knew that lots of children lived in the area and played on the street. The 10th District Court of Appeals found that, under the circumstances, the driver was charged with a higher duty of care.
Similarly, Amerson was charged with a heightened duty to watch out for Moore, who could not be expected to have the same appreciation for traffic dangers as an adult, and whose older child companions could not be expected to have the skills of adults at maintaining control of him but, unlike Sargent, supra, there was no evidence that she failed to exercise a greater degree of care in driving past the children. The record is devoid of any evidence regarding the distance at which the children would be in plain view to any driver southbound on Green Road, devoid of any evidence of the distance at which Amerson first saw the group, and devoid of any evidence on the stated or estimated speed of Amerson's car when she first saw or should have seen the children.
Amerson testified that when she first saw the children they were walking along the Green Road sidewalk. She saw them stop on a tree lawn and poise to cross, and noted that Moore had attempted to cross the street in the path of northbound traffic but was snatched back to the tree lawn by a twelve or thirteen year-old girl who then held him by the hand. She testified that the northbound traffic then hid the children from her view. Amerson stated that as she passed the northbound traffic her passenger cried out an alarm and, as she swerved her car to the right, Moore ran into her left front fender area. She admitted the need for greater precaution, but determined that Moore was, at that time, under the control of a significantly older child who clearly appreciated the dangers of crossing the roadway. Amerson thus did not feel any need at that point to reduce her unstated speed.
Even if Amerson breached a duty by failing to slow down, we must still determine whether the Moores presented sufficient evidence from which a jury could find that Amerson could have avoided hitting the boy. Christmas and Harris claim Harris ran across Green Road. Neither Christmas nor Harris claimed they saw Amerson's car anywhere on Green Road and Christmas denied any northbound traffic immediately prior to the collision. Christmas stated that Brooke let go of Moore's hand and told him to run across Green Road while Brooke remained on the tree lawn, that at impact the speed of Amerson's car was "too fast," and that everything happened very quickly.
The Moores were asking a jury to infer that Amerson saw or should have seen Harris crossing, and should have slowed down in expectation that another child might follow or, in the alternative, reduced her speed because of the presence of children who clearly were poised to cross the roadway. To support these contentions, they ask the jury to speculate that the speed of Amerson's car as it approached the children, although unknown, was unreasonable, and then speculate on the unknown speed Amerson should have been driving in order to avoid hitting Moore.
In contrast, Amerson presented evidence of an unbroken series of events over a brief period of time in which she did not believe her speed, although unstated, was unreasonable under the circumstances at the time Moore darted out into her lane of travel. The judge, while initially finding that the Moores had failed to prove the elements of the tort of negligence, then discussed conflicting evidence and competing inferences raised by the evidence and concluded the Moores' evidence was insufficient.
Even if the conflict concerning whether Amerson breached the duty she owed Moore, then a child of tender years, goes to the weight of the evidence, and not its sufficiency, we would reach the same conclusion. Whether the jury would have found that Amerson was required to use a higher degree of care in driving down Green Road and failed in her duty to Moore, while possibly jury questions, are only two of the elements necessary to prove liability in this case. The Moores failed to produce evidence of any fact upon which a reasonable inference could be established to support the contention that at or under a certain speed, Amerson could have avoided hitting the boy. Without any evidence of the speed Amerson should have been traveling or the distance at which she should have seen Moore darting into her path, the Moores cannot prove that she could have avoided the accident even if she was scrupulously observing her duty. In short, the Moores failed to prove proximate cause. Williams v. Putnam Transfer Storage Co. (Feb. 3, 1994), Cuyahoga App. No. 64659, unreported; Eady v. Ridgeway (Sept. 25, 1996), Hamilton App. No. C-950807, unreported.
It is ordered that the appellee recover from appellants her costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________ ANNE L. KILBANE JUDGE
JOHN T. PATTON, P.J., AND PATRICIA ANN BLACKMON, J., CONCUR.