OPINION
This appeal and cross-appeal emanate from the Trumbull County Court of Common Pleas. Appellants/cross-appellees, Joyce Lehto, Executrix of the Estate of George W. Lehto, and Joyce Lehto, individually, appeal the trial court's entry of September 7, 1999.[1] Appellee/cross-appellant, Thomas A. Sankey, has filed a cross-appeal from the judgment entry assessing costs to him.
On January 29, 1998, appellants filed a complaint against appellee for an automobile accident that occurred on November 10, 1997, between George and appellee.[2] On March 20, 1998, appellee filed an answer and asserted comparative negligence as one of his affirmative defenses. The matter proceeded to a jury trial on August 30, 1999, and August 31, 1999.
At the trial, appellee testified that on November 11, 1997, he was traveling westbound on West Market Street in Warren, Ohio. The accident occurred when he attempted to make a left-hand turn across two eastbound lanes. The transcript revealed that a pick-up truck, in the inside eastbound lane, stopped and motioned for appellee to make his left turn. The collision ensued as appellee passed in front of the truck and entered the curb lane. Appellee testified that he did not stop before he went into the curb lane, but he "distinctly recall[ed] looking to [his] right and not seeing a vehicle in [the eastbound curb] lane."
Following appellee's testimony, Joyce took the stand and related that when she arrived at the hospital, her husband, George, had blood on his shirt, and his lip was swollen and stitched. He also complained of pain in his neck, shoulder, and knee.
George then testified. He stated that his speed prior to the impact was around 20-25 m.p.h. He also indicated that he did not see appellee's vehicle come into his lane at any time before the collision. He was taken by ambulance to the emergency room of Trumbull Memorial Hospital and then followed up with his family physician, Dr. Vijay B. Behari, M.D. ("Dr. Behari"). George's testimony revealed that prior to the accident, he had complained to Dr. Behari of "some neck discomfort or stiffness."
Betty A. Wolfe ("Wolfe") was called to the stand. She stated that she observed the collision that occurred between George and appellee. Wolfe testified that she was behind the vehicle that motioned for appellee to make a left turn. She indicated that there were no vehicles in the curb lane at that time. George's vehicle was behind her. She maintained that his truck entered the curb lane and "sped up instead of slowed down, so [appellee's car] did not have enough time to clear the lane before the truck came through that lane to make the light." She was not sure whether George "was trying to make the light or whether he hit the gas instead of the brake * * *." According to Wolfe, appellee was "more than halfway" across the curb lane before the impact occurred, and the contact took place with the rear of George's truck.
Thereafter, Dr. Behari's deposition was read to the court. Dr. Behari stated that he treated George on several occasions following the accident. Dr. Behari averred that George's "neck pain was aggravated with his auto accident and [his] angina was increased." Dr. Behari declared that George was admitted to the hospital on December 12, 1997, and he was diagnosed with acute coronary syndrome, which Dr. Behari explained was the sudden onset of chest pain from heart disease from blocked arteries. Dr. Behari revealed that he felt that "the aggravation of chest pain was from the stress he was going through." He further explained that "[a]ll of [George's] symptoms were aggravated, both of the neck and of the chest, which is the heart. We did not find anything new, but his symptoms were worse, so it's very [probable] the anxiety from the stress from the auto accident is playing a major role."
Dr. Behari stated that all of the problems George had following the incident were present before the collision except for the laceration on the lip. Dr. Behari testified that George had neck problems in 1991. Specifically, he averred that "[t]he symptoms were aggravated after the accident, but the problem was there already existing." George complained of neck pain at many of his appointments from 1991, until shortly before the accident. However, at his appointment on October 16, 1997, Dr. Behari noted that George's "[r]ange of motion of the neck was painful[,]" and "[t]he neck was painful and restricted." Dr. Behari explained that there was no objective way to determine what changes in George's range of motion resulted from the accident.
At the conclusion of the testimony, appellants moved for a directed verdict, which the trial court overruled. The trial court then stated that it would instruct on comparative negligence, but appellants' attorney objected explaining that he did not think "under the circumstances that [George] was negligent in the operation of his vehicle, and therefore, no comparative negligence instruction [was] warranted * * *." Nonetheless, the trial court did instruct the jury on comparative negligence. Furthermore, appellants requested a jury instruction on the thin skull doctrine, but the trial court overruled the request. The trial court reasoned that the doctrine "applies to somebody that is peculiarly thin skulled and that [George] * * * is no different than the average person who has had heart problems and that the Jury can take into account any acceleration or increased problem that resulted from this accident, no matter what his condition was prior to the accident."
On September 1, 1999, the jury returned a unanimous verdict finding both parties negligent in causing the motor vehicle collision. The jury attributed fifty percent responsibility to each party and awarded $1,023.50 to George and zero damages to Joyce. The trial court reduced the jury verdict to a judgment on September 2, 1999. On September 8, 1999, appellants filed a motion for a new trial and a motion for additur, which the trial court denied. On September 17, 1999, the trial court vacated its entry since it did not consider George's comparative negligence and entered a judgment on the verdict for appellants in the amount of $512.75, with appellee to pay costs. Appellants timely filed the instant appeal and now assert the following assignments of error:
 "[1.] The trial court erred in excluding evidence of [George's] hospitalization of December 12, 1997.
 "[2.] The trial court erred in denying [George's] motion for directed verdict on the issue of [appellee's] negligence and proximate cause for the liability of the collision.
 "[3.] The trial court erred in giving a jury instruction on comparative negligence.
 "[4.] The trial court erred in denying [appellants'] motion for new trial since the verdict was inadequate as a matter of law.
 "[5.] The jury's verdict of fifty percent (50%) comparative negligence was against the manifest weight of the evidence.
 "[6.] The trial court erred in not giving the requested jury instruction pertaining to the thin skull rule."
 Appellee/cross-appellant timely filed a notice of cross-appeal and now asserts the following as error:
 "The trial court erred when it found appellants to be the `prevailing party' and assessed costs to appellee."
 In their first assignment of error, appellants contend that the trial court erred in rejecting evidence of George's December 12, 1997 hospitalization. This court concludes that there was no error in excluding this evidence because although the medical records from the December 12, 1997 hospitalization were barred, Dr. Behari's deposition testimony discussed the hospitalization from that date. At the trial, Dr. Behari's deposition was read to the jury, and therefore, the jury heard his statements regarding his opinion as to the reason for George's hospital admission. According to Dr. Behari, George was diagnosed with acute coronary syndrome, which is the sudden onset of chest pain from heart disease from blocked arteries. Dr. Behari revealed that he felt the stress from the auto accident played a major role with the aggravation of chest pain. Hence, even if there was an error, it was harmless since the jury heard Dr. Behari's opinions as to the December 12, 1997 hospitalization. Appellants' first assignment of error lacks merit.
In their second assignment of error, appellants allege that the trial court committed an error by overruling appellants' motion for directed verdict on the issue of appellee's negligence and the issue of proximate cause for the liability of the collision.
When a party makes a motion for directed verdict pursuant to Civ.R. 50(A)(4), a judge must construe the evidence most strongly in favor of the party against whom the motion is made. A motion for a directed verdict tests the legal sufficiency of the evidence to support a primafacie claim, and thus, presents a question of law. Grau v. Kleinschmidt
(1987), 31 Ohio St.3d 84, 90; Dimora v. Cleveland Clinic Found. (1996),114 Ohio App.3d 711, 716. A judge may not weigh the evidence nor test the credibility of the witnesses, but must give to the party opposing the motion the benefit of all reasonable inferences from the evidence.Zavasnik v. Lyons Transp. Lines, Inc. (1996), 115 Ohio App.3d 374, 378. A judge shall direct a verdict in favor of the moving party only after he has found "that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted [by the nonmoving party] and that conclusion is adverse to [the nonmoving party.]" Civ.R. 50(A)(4). Where there is substantial, competent evidence favoring the nonmoving party, so that reasonable minds might reach different conclusions, the motion must be denied. Ramage v. Cent. Ohio EmergencyServ., Inc. (1992), 64 Ohio St.3d 97, 109.
In the case sub judice, a review of the transcript indicates that after construing the evidence most strongly in favor of appellee, reasonable minds could differ with respect to George's negligence in this matter. Further, appellants did not present substantial, competent evidence to show that reasonable minds could come to but one conclusion. In fact, a witness to the incident, Wolfe, testified that George was behind her, and then he entered the curb lane. Also, according to Wolfe, appellee was more than halfway across the curb lane before the impact occurred. She also stated that George seemed to speed up instead of slow down, so appellee's car did not have enough time to clear the lane before the collision. Therefore, there was evidence showing some negligence on George's part. Thus, it is our view that the trial court did not err in overruling appellants' motion for directed verdict. Appellants' second assignment of error is not well-taken.
As appellants' third and sixth assignments of error are interrelated, they will be addressed in a consolidated fashion. In their third assignment of error, appellants claim that the trial court erred by giving the jury an instruction on comparative negligence. Additionally, in their sixth assignment of error, appellants maintain that the trial court erred by not giving the requested jury instruction as to the thin skull rule.
The trial court has discretionary authority in its duty to instruct on the law as it pertains to the case. State v. Nelson (1973),36 Ohio St.2d 79, paragraph one of the syllabus; see, also, Custer v.Beckett (Jan. 3, 2000), Licking App. No. 99CA00044, unreported, 2000 WL 93740, at 1. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Generally, a trial court should give requested instructions "`* * * if they are correct statements of the law applicable to the facts in the case * * *.'" Murphy v. Carrollton Mfg.Co. (1991), 61 Ohio St.3d 585, 591.
Instructions that, in their totality, are sufficiently clear to permit the jury to understand the relevant law will not be the cause of a reversal upon appeal. Margroff v. Cornwell Quality Tools, Inc. (1991),81 Ohio App.3d 174, 177; Yeager v. Riverside Methodist Hosp. (1985),24 Ohio App.3d 54, 55. If the totality of the instructions clearly and fairly expresses the law, a reviewing court should not reverse a judgment based upon an error in a portion of a charge. Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89, 93; Margroff at 177. A strong presumption exists in favor of the propriety of jury instructions. Brooks v. Mihm
(May 3, 1995), Pickaway App. No. 93 CA 24, unreported, 1995 WL 264861, at 2.
In Ohio, a trial court has a duty "`"to submit an essential issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue."'" (Emphasis sic.) Renfro v. Black (1990), 52 Ohio St.3d 27, 30, quotingBostic v. Connor (1988), 37 Ohio St.3d 144, 147. A trial court has discretion to evaluate the evidence and to determine whether or not a jury instruction is warranted. Renfro at 30. An instruction on comparative negligence is proper where the issue is raised in the pleadings and supported by the evidence. Tyrrell v. Investment Assoc.,Inc. (1984), 16 Ohio App.3d 47, 50.
Our review of the record shows that appellee raised the issue of comparative negligence as an affirmative defense in his answer. In addition, the record contains some testimony that would support the trial court's decision to give that instruction. Wolfe's testimony demonstrated that there may have been some negligence on George's part. She stated that George seemed to have sped up prior to the collision and that appellee was more than halfway across the curb lane before the impact. Accordingly, there was nothing improper about the jury instruction on comparative negligence. We cannot conclude that the trial court abused its discretion when it gave the jury instruction in question. Hence, there was no error committed.
We now turn to appellants' contention that the trial court erred by not instructing the jury on the thin skull rule, which is "* * * `the rule that the defendant takes the plaintiff as he finds him, or the "thin skull" or "eggshell skull" rule. * * *'" Pace v. Ohio Dept. of Transp. (1991), 62 Ohio Misc.2d 184, 185, quoting 22 American Jurisprudence 2d (1988), Damages, Section 281.
In the case at hand, at his deposition, Dr. Behari's testimony revealed that although George's symptoms were aggravated, and it was probable that the anxiety from the auto accident played a major role, there was no objective way to determine what changes in George's range of motion resulted from the accident. In addition, George complained of neck pain since 1991, and his condition was degenerative. Furthermore, as the trial court stated, the jury could take into account any acceleration or increased problem that resulted from the impact, no matter what George's condition was prior to the accident. Therefore, there was an instruction as to aggravation. We conclude the trial court's decision was not unreasonable, arbitrary, or unconscionable, nor did the trial court abuse its discretion in not instructing the jury on the thin-skull doctrine. Appellants' third and sixth assignments of error are not well-founded.
In their fourth assignment of error, appellants declare that the trial court erred in overruling appellants' motion for new trial as the verdict was inadequate as a matter of law. Specifically, appellants' motion for a new trial was based on Civ.R. 59(A)(4) and (6), and they contend that the jury's verdict awarding damages was insufficient or inadequate and against the weight of the evidence.
When a reviewing court is called upon to decide whether a trial court abused its discretion by overruling a motion for a new trial brought pursuant to Civ.R. 59(A)(4) and (6), the appellate court must review the entire record to see if an allegedly inadequate jury verdict was against the manifest weight of the evidence or was based on incompetent evidence or improper argument or conduct of counsel. Medvec v. Cook (Apr. 28, 1994), Cuyahoga App. No. 65183, unreported, 1994 WL 163990, at 3.
Civ.R. 59(A) provides, in pertinent part:
 "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
"* * *
 "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
"* * *
 "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case * * *."
 Civ.R. 59(A) further provides that "a new trial may also be granted in the sound discretion of the court for good cause shown." Regarding the standard of review for an appellate court on matters such as this, a trial court is said to be vested with broad discretion in determining whether to order a new trial. Osler v. Lorain (1986), 28 Ohio St.3d 345, 351. Thus, the granting or denial of a motion for a new trial will not be disturbed absent an abuse of judicial discretion. Yungwirth v. McAvoy (1972), 32 Ohio St.2d 285, 286. A new trial should be granted on the ground that a jury's verdict was contrary to the weight of the evidence if the jury failed to consider an element of damages that was established by uncontroverted evidence. Dillon v. Bundy (1991), 72 Ohio App.3d 767, 773-774.
In Wilson v. Johnson (1962), 118 Ohio App. 101, 103, the court set forth the following analysis of the role of an appellate court in determining the adequacy of a verdict:
 "* * * There is also a hesitancy to disturb as inadequate any verdict where the evidence discloses that the injury complained of might have resulted from another, earlier accident or from a cause unrelated to the accident. * * * It is similarly held where the extent of the injury is a much controverted issue. * * * This is true even though the verdict is less than hospital bills, doctor bills and loss of wages."
 Moreover, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. Further, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In the case at bar, after a thorough review of the record, it is our view that there was no indication that the jury was improperly swayed by passion or prejudice or that the verdict was so overwhelmingly disproportionate as to shock reasonable sensibilities. Here, it appears as though the jury simply chose to give more weight, regarding the proximate cause of the injury, to the evidence of George's conditions prior to the accident. Dr. Behari never testified that it was more probable than not that any aggravation to George's condition was proximately caused by the accident. Since there was no concrete evidence as to the degree of aggravation that the collision may have caused to his previous condition, the trier of fact was free to accept or reject any or all of appellants' evidence. Thus, none of the arguments made or materials submitted by appellants adequately demonstrated that the trial court abused its discretion in denying their motion for a new trial. Since there was competent, credible evidence to support the judgment, we cannot say that it was against the manifest weight of the evidence or that it was contrary to law. Appellants' fourth assignment of error is without merit.
In their fifth assignment of error, appellants maintain that the jury's verdict of fifty percent comparative negligence was against the manifest weight of the evidence.
Pursuant to the C.E. Morris test, supra, a jury verdict is to be upheld if supported by some competent and credible evidence and reversed as being against the manifest weight of the evidence only if there is a complete lack of any competent and credible evidence with which to support the judgment.
Furthermore, under R.C. 2315.19(A)(2), the negligence of a complainant, which contributes to his or her own injuries shall not bar recovery on the complaint unless it is greater than the negligence of the other tortfeasors involved. However, a complainant's damages must be reduced by the level of his or her negligence.
In the present matter, for the reasons stated in appellants' second and third assignments of error, it is our conclusion that the verdict was supported by some competent and credible evidence. Appellants' fifth assignment of error is overruled.
We now turn to appellee's assignment on cross-appeal. In his sole assignment of error, appellee asserts that the trial court erred when it found appellants to be the "prevailing party," and thus, assessed costs to him.
Here, the issue is whether appellants should be considered the "prevailing party." This argument is based upon appellee's contention that a settlement offer was made, which was rejected by appellants, but which was in excess of the jury verdict. Therefore, they argue that appellants were not the prevailing party under Civ.R. 54(D).
The guideline for assessing costs is set forth in Civ.R. 54(D), which provides that costs shall be assessed to party who is unsuccessful at trial and that "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."
Under Ohio law, "a trial court is empowered to award costs only to a prevailing party." Hagemeyer v. Sadowski (1993), 86 Ohio App.3d 563,566. A trial court's allocation of costs under Civ.R. 54(D), cannot be reversed absent an abuse of discretion. Id. at 567. A "prevailing party" has been defined as:
 "The party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered. * * * This may be the party prevailing in interest, and not necessarily the prevailing person. To be such does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the party who had made a claim against the other, has successfully maintained it. Woodfork v. Jones (Feb. 21, 1997), Montgomery App. No. 15841, unreported, 1997 WL 71820, at 6.
 Appellee claims that appellants are not the prevailing party because George only received a jury award of $512.75, which was less than the settlement offer. We agree with the Woodfork court that:
 "* * * the [Vance v. Roedersheimer (1992), 64 Ohio St.3d 552] definition of prevailing party is limited to parties who receive a larger award in arbitration than they do in a trial on appeal. We do not believe that the holding extends to settlement offers. This view is supported by Civ.R. 68 which states that `(a)n offer of judgment by any party, if refused by an opposite party, may not be filed with the court by the offering party for purposes of a proceeding to determine costs.' If a formal offer of judgment, pursuant to the Rule, cannot be used by a trial court in determining the prevailing party, then it follows that a mere offer to settle may not be so used. * * *" Id. at 7.
 Therefore, since appellee refers to the settlement offer made, appellee's sole assignment of error lacks merit.
For the foregoing reasons, appellants' assignments of error are not well-taken. Further, appellee's assignment of error on his cross-appeal lacks merit. Thus, the judgment of the Trumbull County Court of Common Pleas is affirmed in all respects.
 __________________________________ HONORABLE MARY CACIOPPO, Ret., Ninth Appellate District, sitting by assignment.
O'NEILL, P.J., dissents with Dissenting Opinion, CHRISTLEY, J., concurs.
[1] For purposes of this opinion, appellant, Joyce Lehto, will be referred to as Joyce and appellant, George W. Lehto, who is now deceased, will be referred to as George. However, collectively, Joyce and George will be referred to as appellants.
[2] George Lehto filed a complaint for medical expenses and personal injuries, and his wife filed a loss of consortium claim.