BURKS, APPELLANT, v. THE CHRIST HOSPITAL, APPELLEE.

(No. 68-492—Decided July 9, 1969.)

130

*Messrs. Goldman, Cole & Putnick, Mr. Douglas G. Cole* and *Mr. Otto F. Putnick,* for appellant.

*Messrs. Rendigs, Fry, Kiely & Dennis* and *Mr. Ralph F. Mitchell,* for appellee.

O'Neill, J. The Court of Appeals was in error in holding that the trial court should have sustained the defendant's motion for a directed verdict.

According to Dr. Lloyd Larrick, the administrator of The Christ Hospital, the hospital did not have a service operation manual for nursing personnel in May of 1960 when plaintiff's injuries occurred.

In The Christ Hospital School of Nursing, which is a training school for nurses under the control of the same board of directors as The Christ Hospital, there was in use a "Nurses' Procedures Manual," which sets forth the rules that were taught to the nurses as good operating rules for the normal standard of care to be followed by a nurse in caring for a patient in the hospital.

This manual provided that side rails should always be applied to the bed of a patient who is *restless, very obese, under deep sedation,* or in any other case where side rails would be an added protection, and provided further that any omission of side rails, when the patient's condition would seem to warrant it, *must be on written order of the attending physician.* The manual also provided that if the patient is permitted to get up alone, or if he is likely to get up without permission, the rollers on the bed must be removed rather than apply side rails.

Dr. Larrick testified that the teaching manual prescribed a standard of care which the nurses who graduate from the School of Nursing are to follow in the care of patients, whether they work at The Christ Hospital or any other hospital. There is evidence in the record that other hospitals in the Cincinnati community used as their operating standards for care of patients the standards of care set forth in this nursing school teaching manual.

In the instant case, plaintiff was placed in a bed

which had rollers and raised side rails on it the first day that she was in the hospital. She was then transferred to a bed which had rollers, but no side rails, and it was from this bed that she fell. The evidence showed that she had been given drugs during the four days prior to the time she fell from her bed and that she was in a sedated, foggy and disoriented state at the time she fell. On the day before she fell, she was allowed to get up once to go to the bathroom, but because she was so short of stature and obese she was provided with a footstool to help her get from and to her bed, at which time she was assisted by a nurses' aid. The patient's doctor testified for the defense that he had not ordered side rails because he wanted the patient to be up and around.

Where a short, obese hospital patient, who is in severe pain, is placed in a hospital bed with rollers and without side rails and sedated to the point where she is foggy, drowsy and disoriented, and while under the effects of this sedation she falls from her bed and is injured, it is a jury question as to whether the hospital was negligent in not applying raised side rails to the bed, and, if the jury finds that the hospital was negligent, it is then a question for the jury to determine whether that negligence was the proximate cause of the injury which the patient suffered. *Jones v. Hawkes Hospital of Mt. Carmel*, 175 Ohio St. 503.

Under such circumstances, expert opinion is not controlling as to what the rules, regulations, customs or standards of care are with regard to the application of side rails to a bed in a hospital. In considering the question of the negligence of the hospital, the jury must determine whether the hospital exercised reasonable care in promulgating and enforcing rules to protect the patient against the dangers incident to the patient's condition. *Schwer v. New York, Chicago & St. Louis Rd. Co.*, 161 Ohio St. 15; *Jones v. Hawkes Hospital of Mt. Carmel, supra.*

With regard to the question of proximate cause, the Court of Appeals was in error in its conclusion that "no one knows just how she got from the bed to the floor."

The defendant, in its answer, admitted that the plaintiff fell from the bed to the floor at the time she alleged in her petition.

The judgment of the Court of Appeals is, therefore, reversed and the judgment of the trial court affirmed.

*Judgment reversed.*

TAFT, C. J. CORRIGAN, MATTHIAS, HERBERT and DUNCAN, JJ., concur.

SCHNEIDER, J., concurs in the first paragraph of the syllabus and in the judgment.

CORRIGAN, J., of the Eighth Appellate District, sitting for ZIMMERMAN, J. Because of the inability, "by reason of illness," of JUSTICE CHARLES B. ZIMMERMAN "to hear, consider and decide" this cause, JUDGE CORRIGAN of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE ZIMMERMAN, and JUDGE CORRIGAN did so and heard and considered this cause prior to the decease of JUSTICE ZIMMERMAN on June 5, 1969.