BOLTENHOUSE *v.*
OHIO STATE UNIVERSITY HOSPITAL.

(No. 87-01144—Decided
February 28, 1989.)

Court of Claims of Ohio.

*Gary J. Pandora,* for plaintiff.
*Anthony J. Celebrezze, Jr.,* attorney general, and *Gene Holliker,* for defendant.

FRED J. SHOEMAKER, J.  On January 7, 1987, plaintiff, Barbara Boltenhouse, filed this action against the defendant, the Ohio State University Hospital. The plaintiff alleges that defendant, through its employees, negligently allowed plaintiff's decedent, Tamela Boltenhouse, while a patient at the hospital, to purchase two bottles of analgesics containing acetaminophen from its gift shop. The plaintiff's decedent subsequently consumed nearly the entire contents of both bottles and thereafter died due to said ingestion of the analgesics.

On February 13 and 14, 1989, the action came before the court on the sole issue of liability. Prior to trial the parties submitted briefs outlining their respective positions. The court has considered the evidence, arguments, and briefs and renders the following decision.

1

## Findings of Fact

The parties entered into, and admitted as evidence, stipulations of fact in this matter. In order to properly enunciate the particular facts pertaining to the parties' dispute, the court adopts the stipulations, in part, as its findings of fact, with other additions. The court's findings are as follows:

"(1) At all pertinent times herein, defendant Ohio State University (hereinafter referred to as 'OSU') owned, operated, managed and staffed a full care hospital facility in Columbus, Ohio. At all pertinent times herein, OSU owned, operated, managed and staffed a gift shop located within the hospital which sold, among other items, over-the-counter analgesics, including Extra Strength Tylenol caplets in quantities of 50 caplets to a bottle;

"(2) From December 12, 1985, to January 15, 1986, Tamela Boltenhouse was in a hospital/patient relationship with OSU;

"(3) At all times during her admission, OSU, through its medical and nursing staff, knew that Tamela Boltenhouse had a past medical history of chronic alcoholism and chronic pancreatitis. OSU further knew through its medical and nursing staff that due to chronic pancreatitis she developed persistent and severe incapacitating abdominal pain which required frequent medication for relief. As a result, she suffered from addiction to the narcotics necessary for control of her chronic pain;

"(4) Commencing at least on January 13, 1986, until discovery of her overdose of acetaminophen, OSU, in and through its medical and nursing staff, attempted to wean Tamela Boltenhouse off her dependency on pain medication, although she continued to experience pain during this period. Gift shop personnel were unaware of her medical history or condition;

"(5) From December 30, 1985, until January 13, 1986, Tamela Boltenhouse made requests for pain medication, and sometimes requested more medication before the next scheduled dose of medication;

"(6) On January 13, 1986, Tamela Boltenhouse ingested a fatal dosage of acetaminophen. Acetaminophen is one of the ingredients in Extra Strength Tylenol;

"(7) On January 14, 1986, at 4:00 a.m., Tamela Boltenhouse was found in a lethargic condition. A brown paper bag was found in the furthest rear portion of the bedside table drawer and contained a double package of Extra Strength Tylenol caplets. One bottle containing 50 caplets was empty and a second bottle containing 50 caplets had 26 caplets remaining. The Tylenol box had a price tag from the OSU gift shop;

"[Note: the court has omitted Joint Stipulation No. 8.]

"(9) No written or oral policy existed at OSU or OSU Gift Shop on January 13, 1986, concerning either the sale of over-the-counter medications, including Tylenol, to patients of the hospital, or the quantity of such medications sold to patients;

"(10) The Ohio State University Hospital was accredited by the Joint Commission on Accreditation of Hospitals in 1985 and 1986;

"(11) It is more probable than not that Tamela Boltenhouse purchased the Tylenol at the defendant's gift shop;

"(12) There were no prior incidents at defendant's facility which occurred in the same manner as in the case at bar."

## Conclusions of Law

As aforementioned, plaintiff alleges that Tamela Boltenhouse, a patient at defendant's facility, died as a result of ingesting Tylenol which she purchased at the defendant's gift shop

and that defendant was negligent in not properly providing for Tamela's safety. The defendant contends that the case is framed as a medical negligence (improper care or treatment) action and, thus, pursuant to Evid. R. 601(D), requires a medical expert to testify as to the issue of inadequate care. The plaintiff did not present a licensed physician to provide such testimony.

The defendant argued at trial that plaintiff's lack of an expert should bar recovery since there was no medical opinion rendered on the issue. In this regard, defendant presented a motion to dismiss the plaintiff's case. The court reserved ruling on the motion at trial. Upon consideration of the parties' arguments, the court hereby finds that said motion is not well-taken and is denied. The court agrees with the plaintiff that this is not a medical malpractice action; expert opinion is not necessary with regard to the application of hospital rules, regulations and standards of administrative procedure. See *Burks* v. *Christ Hospital* (1969), 19 Ohio St. 2d 128, 131, 48 O.O. 2d 117, 118, 249 N.E. 2d 829, 831-832.

The court views this action as a claim of negligence as to hospital administration, and as such R.C. 2305.11 and Evid. R. 601(D) are not applicable. Therefore, the court finds that the procedures involved in the situation at bar are within a lay person's knowledge or experience. Plaintiff did not claim that there was any medical diagnosis, care, or treatment which was unacceptable. Rather, the critical issue pertains to whether defendant was negligent in selling drugs to said patient at the defendant's gift shop without physician approval.

In view that this is a negligence claim, the plaintiff has the burden of proof to show by a preponderance of the evidence that defendant was negligent under the circumstances. It is generally accepted in Ohio that the essential elements of negligence are (1) a duty of care owed to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) an injury proximately resulting from such breach. 70 Ohio Jurisprudence 3d (1986) 46, Negligence, Section 9; *Di Gildo* v. *Caponi* (1969), 18 Ohio St. 2d 125, 47 O.O. 2d 282, 247 N.E. 2d 732.

In an effort to meet her burden, plaintiff focuses on the standards and policies set forth by the Joint Commission on Accreditation of Hospitals (now Joint Commission on Accreditation of Healthcare Organizations) ("JCAH") and the defendant's Department of Pharmacy. Timothy Moore, the Senior Director of Pharmaceutical Services at the pertinent hospital, testified that the JCAH, which accredits hospitals if certain requirements of its manual are met (the hospital has adopted the JCAH's guidelines), has standards for the proper dispensing of drugs to patients. In addition, Moore indicated that one of his administrative obligations was to monitor the distribution of drugs within the facility and that the defendant's Department of Pharmacy had adopted various policies and procedures governing the distribution of drugs, including over-the-counter medications, to patients of the hospital. Moore stated that the distribution of all drugs should be controlled by the hospital's Department of Pharmacy and that the JCAH suggests that such procedure would be the optimum condition. He testified, however, that the JCAH standards do not mention that there should not be over-the-counter drugs sold at a hospital's gift shop nor do the policies set forth by the Department of Pharmacy. Moore did not believe that such a practice was advisable, but acknowledged that there are no standards that preclude this activity. Moore testified that the JCAH standards were followed at the time of

4

the incident and that, in essence, the selling of Tylenol in the gift shop was not restricted.

The defendant presented a witness that investigated hospitals in the Miami, Florida, area to ascertain whether the hospital gift shops stocked over-the-counter medications and whether they sell them without question. Von Volpi, a private investigator, was employed by the defendant to visit Miami-area hospitals, dressed as a hospital patient, *i.e.,* bathrobe and tee shirt, and conduct an investigation concerning the sale of Tylenol in the gift shops. Volpi testified that he purchased Tylenol, without inquiry or resistance from the hospitals' personnel, at all the hospitals he visited. Obviously, the investigation was performed to demonstrate that defendant's practice in the case *sub judice* did not differ from that of other hospitals. The defendant employed the investigator from the Miami, Florida, area due to its understanding that plaintiff planned to offer the testimony of an expert witness from said city.

Upon review of the evidence (testimony, exhibits of departmental policy and JCAH standards, *etc.*), the court concludes that there is a lack of evidence to show that there were any regulatory standards prohibiting the sale of over-the-counter medications in the gift shop to anyone who enters the shop to purchase goods. The policies and standards presented to this court do not expressly state that such a practice should be restricted or controlled under certain circumstances.

The defendant contends that it did not breach any duty owed to the plaintiff and that this incident was totally unforeseeable since, as aforementioned, there were no similar incidents of this nature occurring at the hospital.

"The doctrine of reasonable anticipation or foreseeability of the consequences of one's negligent acts is clearly a part of the negligence law of Ohio. Thus, foresight, not retrospect, is the standard of diligence. To be liable in negligence, one must be guilty of something done or left undone with knowledge, or what is legally tantamount to knowledge, of the situation. Fault on the part of the defendant is to be found in action or nonaction, accompanied by knowledge, actual or implied, of the probable results of his conduct; and a person's liability for his acts depends upon their tendency under the circumstances as they are known or should be known to him. The question of negligence is to be determined by the consideration whether or not a party has guarded against those things which he might reasonably have had cause to anticipate. Although, where it is found that any unreasonable risk of danger should have been foreseen, the practicability of things the defendant might have done to avoid the risk should be taken into account. *There is no actionable liability for negligence unless some injury resulting therefrom could reasonably have been foreseen in the light of attending circumstances.* In other words, damages for an injury resulting from a negligent act of the defendant may be recovered if a reasonably prudent and careful person should have anticipated, under the same or similar circumstances, that injury to the plaintiff or to those in a like situation would probably result. * * *" (Emphasis added and footnotes omitted.) 70 Ohio Jurisprudence 3d (1986) 49, 49-50, Negligence, Section 11. See, also, *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 180-181, 472 N.E. 2d 707, 710.

Moore testified that there were no previous incidents of this kind in the hospital. It is evident that the sale of pain-relieving medications, such as Tylenol, is not restricted in any store for public use. In this regard, the gift

shop does not exist merely for a patient's use; it is in operation, probably for the most part, for those persons that are visiting with loved ones at the hospital — to purchase gifts for those who are ill or to buy something for themselves to pass the time or cope with the situation.

In view of the surrounding circumstances, the court finds that the totality of the evidence demonstrates that the plaintiff has failed to prove by a preponderance of the evidence that defendant was negligent. There were no prior incidents of attempted suicide or suicide in the hospital due to the sale of over-the-counter medications in the gift shop and there was no cause to anticipate someone ingesting the amount of caplets that Tamela did on the day in question. The plaintiff did not inform the court of any other cases, in any jurisdiction, which present the issue in the instant case or support her contentions; also, the court is unaware of any cases that provide a foundation for plaintiff's allegations.

In addition, the court is of the opinion that Tamela Boltenhouse's conduct, whether intentional or inadvertent, did not demonstrate reasonable care for her own well-being. As aforementioned, Tamela ingested seventy-four of the one hundred caplets of Tylenol that she had in her possession. A person has the duty to exercise due care for his or her own safety; there was no showing that plaintiff's decedent experienced such care. In this regard, the court finds that, assuming *arguendo* that the defendant breached any duty of care, Tamela's negligence was greater than that of the defendant.

In conclusion, the court finds that the plaintiff has not met her burden of proof. This action has presented an interesting legal question to the court and it has been decided with considerable thought and analysis. The greater weight of the evidence, however, does not side with the plaintiff. In view of the above findings and conclusions, the court hereby renders judgment in favor of defendant.

*Judgment for defendant.*

FRED J. SHOEMAKER, J., retired, of the Court of Common Pleas of Franklin County, sitting by assignment.