DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, wherein a jury found in favor of appellees John Dooner, M.D., Joan Eischen, CRNA ("CRNA Eischen"), and Associated Anesthesiologists of Toledo, Inc. ("AAT"). Appellant, Joanne M. Luettke, appeals the April 29, 2005 jury verdict and asserts the following assignments of error:
 {¶ 2} I. "The trial court erred and abused its discretion in granting the defendants' motion in limine, and excluding any evidence of St. Vincent's `Resident Manual' and `Rules and Regulations of the Medical Staff.'"
 {¶ 3} II. "The verdict of the jury is against the manifest weight of the evidence."
 {¶ 4} III. "The trial court erred in its instructions to the jury, and in its refusal to submit appellant's requested jury instructions."
 {¶ 5} In early 2001, appellant was diagnosed with a paraesophageal hernia. This type of hernia occurs when a portion of the stomach comes up into the chest, behind the heart. Joseph Sferra, M.D., a general surgeon, recommended that appellant undergo a Nissen fundoplication surgery to correct the hernia.
 {¶ 6} During the surgery, an esophageal dilator device known as a "bougie" is routinely passed down the esophagus and used as a sizer to make sure that when the wrap is performed the opening of the esophagus remains wide enough so that the patient can swallow freely. The bougies come in a series of diameters to accommodate each individual patient's esophagus. In Toledo, the general practice is that the anesthesia team passes the bougie at the surgeon's request.
 {¶ 7} Appellant was admitted to St. Vincent Mercy Medical Center ("St. Vincent") on March 1, 2001 for her surgery. In the pre-operative waiting area, appellant met Sherrie Lynn who introduced herself as follows:
 {¶ 8} "Good morning. My name is Sherrie. I am a registered nurse with the anesthesia department, and I will be one of the people taking care of you today. I am working with Joan Eischen who is a nurse anesthetist, and Dr. Dooner is the anesthesiologist who is working with us as well."
 {¶ 9} Lynn was a registered nurse, enrolled as a student in the certified registered nurse anesthetist ("CRNA") training program at Wayne State University. Through an affiliation program with St. Vincent, students in the Wayne State program participate in clinical training at the hospital. Dr. Dooner, CRNA Eischen and Lynn understood that Lynn would be performing all of the anesthesia related procedures in appellant's surgery from beginning to end. However, Lynn did not identify herself to appellant as a student in training, nor did she discuss with appellant that she would be performing all anesthesia aspects of the surgery.
 {¶ 10} When surgery commenced, Dr. Dooner instructed Lynn to perform the induction and intubation of appellant. After this was accomplished, Dr. Dooner left the operating room. He did not return until he was called back, more than an hour and a half later, after complications arose.
 {¶ 11} Once appellant was anesthetized, Dr. Sferra requested that the anesthesia team pass the bougie down appellant's esophagus. Under the supervision of CRNA Eischen, Lynn successfully passed a size 40 bougie. Dr. Sferra determined the device was within the esophagus and told Lynn to remove it and insert a larger, size 44 bougie to further dilate appellant's esophagus. Lynn inserted the device and indicated that it had been placed at a sufficient distance that it should have been perceptible in the operative field. Dr. Sferra, however, could not see the bougie. Lynn then withdrew the bougie and attempted to pass it a second time. Again, Dr. Sferra was unable to see it. CRNA Eischen then attempted to insert the device, but it was still not perceptible in the operative field. Dr. Sferra then suggested that Dr. Dooner be called back into the operating room.
 {¶ 12} Dr. Dooner arrived back in the room and was briefed on the situation. Suspecting a perforation of appellant's esophagus at this point in time, Dr. Sferra requested that Dr. Dooner pass the bougie. Dr. Dooner attempted the procedure, but again Dr. Sferra was not able to perceive the device in appellant's esophagus. Dr. Sferra began to manipulate the esophagus and saw that the bougie was outside the esophagus. Upon confirming that the device had in fact perforated appellant's esophagus, Dr. Sferra immediately consulted with a cardiothoracic surgeon at St. Vincent. They concluded appellant's surgery would have to be converted to an "open" procedure, which involved an incision in the abdomen as opposed to using a laparoscope. Surgery was performed to repair the esophagus at that time as well.
 {¶ 13} Due to the perforation and the repair, it was necessary to put appellant on a feeding tube and keep her in a "coma-like state" for four days. Fluids accumulated in appellant's lungs and were evacuated. She also developed blood clots in her arms. It took three to four days before appellant was stable enough to be removed from the ventilator. Following the perforation, appellant experienced severe pain, gagging, nausea, loss of appetite, poor esophageal motility, and depression. Two months after the procedure, appellant was still unable to eat on her own and was continuously nourished through feeding tubes.
 {¶ 14} As a result of appellant's complications, she was admitted to the University of Michigan Hospital where it was determined that she had no esophageal motility, as well as anxiety and depression. Appellant's depression was so severe that she required electric shock therapy, which caused severe memory loss and was subsequently discontinued as a result. Appellant continues to choke and gag when she eats and is afraid to go out to eat in public because of the symptoms.
 {¶ 15} Subsequently, appellant filed suit against appellees CRNA Eischen, Dr. Dooner and his professional practice group, AAT. Also named as defendants were student nurse Lynn and St. Vincent.[1] Appellant asserted claims for medical malpractice and informed consent.
 {¶ 16} Prior to trial, the trial court granted, in part, appellees' motion in limine, which excluded any evidence and/or testimony with respect to the policies, provisions, and standards concerning the supervision of anesthesia procedures performed by students, informed consent for student participation, and patient rights, as set forth within St. Vincent's Resident Manual ("Manual") and Rules and Regulations of the Medical Staff ("Regulations"). Appellant's claims were ultimately tried to a jury which returned a verdict in favor of appellees on all counts. This appeal now follows.
 {¶ 17} In her Assignment of Error No. I, appellant argues that the trial court abused its discretion in granting appellees' motion in limine and excluding any evidence of St. Vincent's Manual and Regulations.
 {¶ 18} Appellant repeatedly attempted to introduce as evidence both the Manual and Regulations to demonstrate that St. Vincent established a specific standard of care to be followed by the entire medical staff and that appellees violated that standard. The Manual contains safety standards of care promulgated by St. Vincent for the supervision and responsibilities of students in training. The Manual provides, in part, that:
 {¶ 19} "* * * all anesthetic procedures, other than locals,shall be performed in the presence and under the supervision ofa qualified anesthesiologist." (Emphasis added.).
 {¶ 20} It further states that a patient has the right to:
 {¶ 21} "Know the name and professional status of your health care providers, the reasons for any changes, and the relationship to any other health care or educational institution involved in your care."
 {¶ 22} The Regulations further define the hospital's standard of conduct and care required of all medical providers. It provides for the rights and responsibilities of the patient, which include the right to know the identity and training status of student caregivers, in addition to the rules governing consent for procedures and "other research/educational projects." Regarding the identity of caregivers, the Regulations provide:
 {¶ 23} "Patients should be told of the identity andprofessional status of individuals providing service to them,
and which physicians or other practitioners are primarilyresponsible for their care. Patients should also be informed of the relationship between the medical center and other institutions involved in their care. Persons engaged in clinicaltraining programs or in the gathering of data for research purposes should identify themselves." (Emphasis added.).
 {¶ 24} The Regulations go on to address the topic of consent and state that:
 {¶ 25} "Patients have the right to make reasonably informed decisions involving their health care, and the right to the information necessary to make such decisions."
 {¶ 26} "Patients should be informed about who is responsiblefor performing procedures or treatments." (Emphasis added.).
 {¶ 27} "Patients shall be informed if the medical center or health care professional proposes to engage in, or perform experiments or other research/educational projects affecting their care or treatment and may consent or refuse to participatein any such activity." (Emphasis added.).
 {¶ 28} The trial court, however, granted appellees' motion in limine and excluded both the Manual and Regulations. Its basis for granting the motion was that the documents were irrelevant in determining the standard of care. The court found, in the alternative, that if the documents had relevance, admission would mislead or confuse the jury. The court further supported its conclusion by stating that "expert testimony rather than documents or other evidence establish [sic] the proper standard of care in a medical setting."
 {¶ 29} A motion in limine is designed "to avoid the injection into a trial of a potentially prejudicial matter which is not relevant and is inadmissible." Reinhart v. Toledo Blade Co.
(1985), 21 Ohio App.3d 274, 278. To be relevant and therefore admissible, evidence must have a tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.
 {¶ 30} Appellees maintain that neither document is relevant to provide evidence of a standard of care. They contend that the Manual pertains to "residents" and medical students only.[2] Because Lynn does not fall under either classification, appellees argue that it does not apply to her. Nevertheless, appellees fail to present any document that does pertain to Lynn or any other student nurse anesthetist. They would have this court believe that there is no written standard that applies to student nurses when there is an entire manual that controls the conduct of medical students and residents. To argue that residents and medical students are required to perform all anesthetic procedures "in the presence and under the supervision of a qualified anesthesiologist," but a lesser trained student nurse anesthetist performing the exact same procedures is not, is illogical and offensive to one's sensibilities. The terms and conditions of the Manual with respect to the supervision of anesthetic procedures should be applicable regardless of whether the procedure is being performed by a resident, a medical student, a student nurse, or a student nurse anesthetist.
 {¶ 31} Appellees further echo the conclusion made by the trial court and argue that both the Manual and Regulations are irrelevant because expert testimony, not documents, establishes the standard of care in a medical setting. While appellees' and the lower court's contention is correct, the Ohio Supreme Court held that hospital rules and regulations are, at the discretion of the judge, also admissible to provide evidence of the standard of care. Berdyck v. Shinde (1993), 66 Ohio St.3d 573; Burks v.The Christ Hospital (1969), 19 Ohio St.2d 128, 131. See, generally, Gray v. Grandview Hospital (Jan. 22, 1979), 2d Dist. No. 5849; Siebe v. University of Cincinnati (Ct. Claims 2001),117 Ohio Misc.2d 46. Therefore, the trial court's stated basis for excluding both documents is contrary to established law. Moreover, if self-imposed policies, rules and regulations are not relevant to help determine a hospital's standard of care, as appellees and the lower court would have one believe, then why would an organization create such policies in the first place? The whole purpose of promulgating documents, such as the ones at issue here, is to ensure that employees follow a consistent standard of care and quality at all levels of an organization.
 {¶ 32} In further support of their relevance, both the Manual and Regulations substantiate the assertions of appellant's expert witness regarding the standard of care, as well as the ethical guidelines established by the American Society of Anesthesiologists ("ASA"). Appellant argues that because such evidence, if presented, would make the existence of appellees' violation of the standard of care more probable than not, the documents are relevant and therefore should have been admitted. We agree. All of the excluded evidence endorses a standard of care that requires supervision of student nurse anesthetists by an anesthesiologist. It further endorses a standard that requires the medical profession to inform patients of the identity and training status of the individuals involved in their care. It is undisputed that Lynn failed to disclose her student status to appellant and the extent of her involvement in appellant's surgery. Appellees also do not dispute that Dr. Dooner failed to supervise Lynn during the bougie procedure. The actions taken by appellees and Lynn were in clear violation of St. Vincent's policies, rules, and regulations. Thus, the Manual and Regulations, if admitted, would have made the existence of appellees' violation of the standard of care, i.e. the duty to disclose training status and the required supervision of student nurse anesthetists, more probable than not. For that reason, both documents are relevant and admissible pursuant to Evid.R. 401.
 {¶ 33} However, even if evidence is relevant, it must be excluded under Evid.R. 403(A) "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Despite the mandatory terms of Evid.R. 403(A), a decision to admit or exclude evidence will be upheld absent an abuse of discretion. O'Brienv. Angley (1980), 63 Ohio St.2d 159, 163 (Citations omitted.). "`The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, quoting State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 34} As noted, the trial court excluded the Manual and Regulations based on irrelevancy in determining the standard of care. The court further determined that if the documents had relevance, admission would mislead or confuse the jury. We have already decided that both documents are relevant to provide evidence of St. Vincent's standard of care and appellees' violation of that standard. However, we must now consider whether the documents fall under Evid.R. 403(A) and would be therefore inadmissible.
 {¶ 35} Appellees maintain that even if the documents were relevant and subsequently admitted into evidence, they should be excluded because they would ultimately confuse the jury as to the applicable standard of care. They contend that the jury would have the daunting task of determining the standard of care from the testimony of two competing expert witnesses, from the ASA ethical guidelines, and from the hundreds of pages of hospital policies and regulations. Appellees argue that the jury could potentially have to decide between five different standards of care based upon the documents and expert testimony, as opposed to two standards of care based solely on expert testimony.
 {¶ 36} What appellees fail to mention, however, is that four out of the five pieces of evidence, including the Manual and Regulations, endorse one uniform standard of care, while appellees' expert witness endorses another. It is difficult to understand how admitting into evidence documents that support one of two standards of care would be confusing to the jury. Furthermore, when a hospital publishes its own policies, procedures, rules, and regulations establishing its standard of care, it defies logic to think that such documents would be confusing or misleading to a jury. If anything, St. Vincent's documents would have helped the jury determine the applicable standard of care. We find both documents to be relevant and the trial court's grounds for exclusion to be outside the parameters of the statute. Thus, the trial court's decision to exclude the Manual and Regulations was not justified and clearly contrary to reason. Consequently, we find that the trial court acted unreasonably and arbitrarily in refusing to admit St. Vincent's Manual and Regulations and, therefore, the court's grant of appellees' motion constituted an abuse of discretion.
 {¶ 37} However, even in the event of an abuse of discretion, a judgment will not be disturbed due to exclusion of evidence unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. Civ.R. 61;O'Brien, 63 Ohio St.2d at 164-165. Appellees maintain that appellant's substantial rights were not affected by the exclusion of the Manual and Regulations. Rather, they claim the trial court's decision to exclude both documents was merely harmless error. See Civ.R. 61. They maintain that appellant was able to introduce other evidence on the issues for which the documents were offered and refer specifically to appellant's expert witness, John W. Schweiger, M.D. Dr. Schweiger testified that the standard of care for student participation requires disclosure of the student's status, as well as an explanation of the role the student will play in the patient's treatment. Dr. Schweiger's testimony was likewise identical to the standards set forth by St. Vincent and the ethical guidelines promulgated by the ASA.
 {¶ 38} Oddly enough, however, appellees' expert witness, Richard Prielipp, M.D., who, in fact, practices at St. Vincent, testified contrary to Dr. Schweiger with regard to St. Vincent's written policies and the ASA guidelines. Dr. Prielipp testified that the standard of care did not require Dr. Dooner, CRNA Eischen or Lynn to disclose to appellant that Lynn was a student nurse anesthetist. He also testified that the standard of care did not require Dr. Dooner to be present in the operating room during the bougie placement, and that Dr. Dooner properly supervised Lynn during the one and a half hour period that he was not present in the operating suite. CRNA Eischen also testified that there was no policy that required students to indicate they were students. Dr. Dooner further testified that, in his opinion, there were no formal consent procedures for the participation of student CRNA's in patient procedures without the patient's knowledge.
 {¶ 39} It is undisputed that appellees and their expert witness's testimony directly conflicts with the aforementioned standard of care set forth by St. Vincent in the Manual and Regulations. It is also undisputed that Dr. Dooner and Dr. Prielipp, who both testified and acknowledged that the ASA has well-defined ethical guidelines regarding the disclosure of student participation in anesthesia procedures, later testified that the applicable standard of care was contrary to those guidelines. Consequently, appellant was prejudiced by the exclusion of both documents in her ability to impeach appellees and their expert witness with evidence of the hospital standards. The jury was also prevented from considering crucial evidence that affected the credibility of appellees and their expert witness.
 {¶ 40} When a hospital promulgates specific supervisory standards for anesthetic procedures, as well as patients' rights regarding disclosure of student status, it is clearly prejudicial to find them inadmissible. The exclusion of St. Vincent's Manual and Regulations, in the case sub judice, was not harmless error. It is, therefore, our conclusion that substantial justice has not been done, and that the trier of facts might not have reached the same conclusion had this error not occurred.
 {¶ 41} In sum, we find that the Manual and Regulations are relevant documents and should have been presented to the jury to provide evidence of a standard of care. Moreover, the exclusion of such documents was an abuse of discretion and undermined appellant's substantial rights. Accordingly, appellant's first assignment of error is found well-taken. Appellant's final two assignments of error are therefore rendered moot and need not be considered here.
 {¶ 42} Nonetheless, appellees set forth a cross-assignment of error, pursuant to App.R. 3(C)(2), to prevent reversal of the trial court's judgment. The cross-assignment of error reads:
 {¶ 43} "The trial court's final judgment could be upheld on the alternative basis that appellant's informed consent claim was without merit as a matter of law."
 {¶ 44} R.C. 2317.54 provides:
 {¶ 45} "Written consent to a surgical or medical procedure or course of procedures shall, to the extent that it fulfills all the requirements in divisions (A), (B), and (C) of this section, be presumed to be valid and effective, in the absence of proof by a preponderance of the evidence that the person who sought such consent was not acting in good faith, or that the execution of the consent was induced by fraudulent misrepresentation of material facts, or that the person executing the consent was not able to communicate effectively in spoken and written English or any other language in which the consent is written. Except as herein provided, no evidence shall be admissible to impeach, modify, or limit the authorization for performance of the procedure or procedures set forth in such written consent.
 {¶ 46} "(A) The consent sets forth in general terms the nature and purpose of the procedure or procedures, and what the procedures are expected to accomplish, together with the reasonably known risks, and, except in emergency situations,sets forth the names of the physicians who shall perform theintended surgical procedures.
 {¶ 47} "(B) The person making the consent acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner.
 {¶ 48} "(C) The consent is signed by the patient for whom the procedure is to be performed, * * *." (Emphasis added.)
 {¶ 49} In the case before us, the material provisions of the consent form read:
 {¶ 50} "* * * I hereby authorize Dr. Sferra and/or such assistants, designees or hospital personnel as may be selected by him, to perform the above described procedure(s) necessary to diagnose and/or treat my condition(s).
 {¶ 51} "* * *
 {¶ 52} "Additionally, I consent to the administration of anesthesia under the direction and supervision of the above doctor(s) or such anesthesiologist as they shall select, and to the use of such anesthetic agents as they may deem advisable."
 {¶ 53} At the trial of this case, Dr. Sferra testified that he was not responsible for the personnel or procedures used in administering anesthesia. Rather, it is clear that Dr. Dooner was responsible for that aspect of the medical procedure. Neither his name nor the name of his student nurse anesthetist appear in the implied consent form. Therefore, the requirement found in R.C.2317.54(A) was not met. Furthermore, the informed consent form signed by appellant shows through its own terms and by a preponderance of the evidence that there was a material misrepresentation of the facts. Specifically, the form consents only to the administration of anesthesia under the direction andsupervision of Dr. Dooner. As noted previously, appellees do not dispute that Dr. Dooner failed to supervise Lynn during the bougie procedure. Accordingly, appellant's cross-assignment of error is found not well taken.
 {¶ 54} On consideration whereof, this court finds substantial justice was not done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This case is remanded to that court for further proceedings consistent with this judgment. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J., concur.
[1] Due to pre-trial rulings, appellant dismissed her claims against St. Vincent. Because Lynn had no malpractice insurance, the court also dismissed the claims against her as well. The parties stipulated and agreed that at all times during appellant's procedure, Lynn was acting as an agent of AAT and that Dr. Dooner and CRNA Eischen had ultimate responsibility for her conduct.
[2] A resident is a licensed physician who has completed medical school. A medical student is one who is in medical school pursuing a medical degree.